## Cox *versus* Freedley.

A conveyance of land bounded by the *side* of a street, gives the grantee a title to the centre of it, if the grantor had title to that extent, and did not expressly, or by clear implication, reserve it; although the distances set forth in the deed bring the line only to the side of the street; and if such street be vacated, the grantee will have a right to extend his line to the middle of it.

Paul *v.* Carver, 12 *Harris* 207 ; s. c. 2 *Casey* 223, affirmed.

A stake by the side of the street is not such a fixed monument as will control the rule of law, that the grantee takes to the centre.

The construction of a deed, in which there is no ambiguity, is for the court and not for the jury; but the court, in construing such a deed, must look into the circumstances under which it was made, as evidencing the intention of the parties.

ERROR to the Common Pleas of *Montgomery county*.

This was an ejectment by Jacob Freedley against Abraham R. Cox, for a lot of ground in the borough of Norristown, beginning at a stake for a corner on the south-easterly line of Penn street, being $34\frac{2}{10}$ feet from the corner of Markley street, thence to the corner of Penn and Markley streets, thence along the easterly line of Markley street 123 feet to a stake for a corner in the said line of Markley street, thence a straight line $133\frac{7}{10}$ feet to the place of beginning ; containing eight perches, or thereabouts.

John Freedley being the owner of a larger property in the borough of Norristown, on the 5th November 1849, conveyed to Abraham R. Cox, the defendant, a portion of it, described as follows, to wit:—

" All that certain messuage and lot or piece of land situate in the borough of Norristown aforesaid, bounded and described as follows, viz. :—beginning at a stake on the north-east corner of Egypt and Race streets, and thence along the north-east side of said Egypt street, south forty-eight degrees five minutes east, ninety-one feet eight-tenths, to a stake in the middle of a ten feet wide alley between this lot and other property of said Abraham R. Cox ; thence, along the middle of said ten feet wide alley, north forty-one degrees and fifty-one minutes east, one hundred and eighty-three feet and two-tenths, to a stake on the south-west side of Penn street; and along said side of said street, north sixty degrees forty-five minutes west, fifty-four feet and two-tenths, to a stake on the south corner of Penn street and Race street aforesaid ; and along the south-east side of said Race street, south fifty-four degrees forty-six minutes west, one hundred and seventy-four feet and four-tenths, to the place of beginning."

On the 10th September 1851, John Freedley conveyed the remainder of the premises to Jacob Freedley, the plaintiff; and by his deed, the property was described as bounded on Race street

[Cox *v.* Freedley.]

as follows: "thence along the south-east side of said Race street, south fifty-four degrees forty-six minutes west, $173\frac{4}{100}$ feet to the easterly corner of said Race and Egypt streets."

Race street was laid out and opened in 1834; and on the 28th May 1855, it was duly vacated, and a new street, called Markley street, was laid out and opened, partly on the bed of the said Race street, leaving a strip of ground between the side of the new street and the defendant's ground, but not extending to the centre of the old street, containing about eight perches. The defendant took possession of this strip, and for it the present ejectment was brought.

The court below (SMYSER, P. J.) delivered the following charge to the jury:—

"The material and only question here is, whether the boundary line between the parties is the middle or the south-easterly side of old Race street, which was vacated in 1855. If the former, then the defendant would be entitled to your verdict; if the latter, your verdict would be for the plaintiff for the land demanded in his writ. So long as Race street remained a public highway, and subject to the right of passage on the part of the public, this was a question of little practical moment to the parties, for neither could occupy or use the portion of land in controversy, and which fell within the lines of the street. The street being vacated, the territory in dispute is thereby thrown open again to private occupancy. The defendant is in possession; his right to retain that possession will depend upon whether the line between the parties is at the middle or side of the street.

"The general rule in all such cases is, that where a deed calls for a street or a stream as a boundary, the boundary is the middle of the stream or street, and to that line the fee passes. And the right to the centre of the street will pass, although the deed calls for a certain side of it only, and even although the distance called for by the deed, if measured, will reach to the side only; so that a grant of land beginning at, say, the north side of a street, and running along said north side of said street a number of rods, will nevertheless extend to the middle of the street in spite of these seemingly strong and emphatic words.

"The general rule I have stated, being one of policy and convenience, can only be controlled and deprived of its operation by the express terms of a deed, showing, in plain and unambiguous terms, the intention of the grantor to limit the title to the side, instead of extending it to the middle of the street. The same effect would follow a certain and immemorial usage. The question here arises, in the first place, on the deed from John Freedley to defendant; for it must be remembered that, at that time, the former owned all the land, both tracts, and did not convey the residue to plaintiff until nearly two years after. He therefore only reserved

[Cox *v.* Freedley.]

to himself what he did not convey to Cox, and could only convey to Jacob Freedley what he had reserved to himself.

"Now, looking at the deed to Cox in 1849, we find what I regard as an express exception, or clear and unequivocal declaration of an intention to limit the grant to the side of the street. An examination of this deed not only shows that the side of the street is called for, and that the measurement of the distances called for terminate in that side (which I have said, would not of themselves control the legal rule), but it refers to monuments, to wit, *stakes*, standing or placed in the side, at distances corresponding with those given in the deed; those distances themselves, many of them being given, even to minute fractional parts. This reference to fixed monuments in the side of the street seems to locate the boundary, and to leave no doubt as to what was the paramount intention of the parties to the conveyance, which intent is the controlling rule.

"It is the duty of the court to expound and give a construction to written instruments; and were this question to be determined on the deeds alone, I would unhesitatingly construe them in the manner just stated, and give a binding instruction to the jury accordingly.

"But there has been parol evidence given on both sides, to aid the written evidence, in arriving at their construction, and the actual intent of the parties, and this without objection by either party. The plaintiff, for instance, has shown the location of the head-race of the mill on his property, to be along or near the middle or centre line of old Race street, to show the improbability, as a question of intention, that John Freedley, when he owned both tracts, and sold off the lower one to Mr. Cox, could have intended to convey to the centre of the street, and thus cramp and confine himself in the use and repairing of his race, by having the line of an adjoining owner almost touching it. Whilst the defendant has shown a fence or enclosure on the lower or Cox tract from 1834, with little interruption, up to the present time; and this for the purpose of showing a long-continued and immemorial usage in conformity with the right now claimed by him, and as fixing and showing the intention and understanding of all parties, that the real dividing line was meant to be the middle of the street.

"The effect of this mingling of parol and written evidence is, to draw to the jury the determination of the question of intention: Evans *v.* Negley, 13 *S. & R.* 221.

"Whilst, therefore, you will receive with respect our construction of the deeds, you will examine carefully the extrinsic circumstances *dehors* the deeds, and taking the whole together, endeavour to ascertain what was the real intention of the parties to the conveyance, and whether it was such as the defendant alleges, or any other and different one from that which the written evidence alone

[Cox v. Freedley.]

discloses, and render your verdict accordingly. I have the less difficulty in so submitting the case to you, inasmuch as the parol evidence submitted on both sides, which draws to the jury the determination of the fact, was put in without any objection on either side, either on the trial or argument thereof to the jury."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiff, the defendant removed the cause to this court, and here assigned the same for error.

*Boyd*, for the plaintiff in error, cited Paul v. Carver, 12 *Harris* 207; s. c., 2 *Casey* 223; Grier v. Sampson, 3 *Id.* 183.

*Krause* and *McMiller*, for the defendant in error, cited 3 *Kent Com.* 433; Jackson v. Hathaway, 15 *Johns.* 447; Union Burial Ground v. Robinson, 5 *Wh.* 18.

The opinion of the court was delivered by

WOODWARD, J.—The case of Paul v. Carver was twice before this court, and is twice reported, 12 *Harris* 207, and 2 *Casey* 223.

On the last hearing, it came down to the question, whether the owner of a city lot, whose deed is bounded " *along the northerly side*" of a particular street, has title to the centre of the street, so that after vacation of the street by public authority, he may recover in ejectment the ground lying between the northerly side and the centre. In deciding this question in favour of the plaintiff, we admitted that the intention of the parties was to control the construction of the deed, and that they might define their intention to be bounded by the side of the street so explicitly as to limit the right; but we held, that such intention was not to be inferred from the words " along the northerly side," nor from measurements of the rectangular lines that would terminate at the side.

That the decision was well supported by reason and authority, was fully shown by the learned judge who delivered the opinion. I relieve the present case of much discussion, by reference to what was said when that case was before us, especially the last time.

We have here for construction the words contained in the deed of John Freedley to Abraham R. Cox, of 5th November 1849.

It describes a lot in the borough of Norristown, by courses and distances, and by streets and lanes. "Along the north-east side of Egypt street" and "along the south-east side of Race street," are two parts of the description. The measurements to these streets would terminate at their sides respectively.

Now applying the ruling in Paul v. Carver to this description,

is it not perfectly manifest that we must say Cox took to the middle of Egypt and Race streets?

And why should not the doctrine of that case be applied?

It was maturely considered and unanimously pronounced.   It was shown to be agreeable to the general principles of the common law, as laid down by Chancellor KENT and other text writers, and as they had been applied in numerous cases, in England and our own country.   It was shown also, to be sanctioned by the general sense and understanding of the people—and that any doubt or denial of it would introduce intolerable inconvenience, confusion, and litigation.

It was well known, that there were cases in the books inconsistent with this doctrine.   Our own case of the Union Burial Ground *v.* Robinson, 5 *Wh.* 18, was relied on then, as it is now, but that case, if confined to its circumstances, is not authority here.   The street in question there, never had any existence, except on paper.   Though laid out, it was never opened through the land that was in controversy, and it would seem, could not have been, without a previous order made and granted by the supreme executive council, directing it to be done, which did not appear to have been applied for or obtained.

The court held, that the grantee should be limited by the very precise measurements expressed in his deed, which brought him *to* and not *into* this imaginary street, and they left the right of soil in the whole street in the grantor—a doctrine, this last, which is not to be applied to streets actually opened and used by the public, as is shown by the case of the Penny Pot Landing, 4 *Harris* 89.   That was the case of an addition made to the width of Vine street, in the city of Philadelphia, by the agents of William Penn, in 1690, and this court held, that the rights of the adjacent and neighbouring lot-holders, as well as the public, to Vine street so enlarged, were vested rights of which they could not be divested by William Penn or his successors. And this is the general principle in all towns.   The dedication of streets, lanes, and alleys divests the proprietor of his right of soil therein, and purchasers of lots bounded on streets acquire title *usque ad filum mediæ*, unless there be a very express limitation of their grants to the margin of the street.

The law with respect to public highways and unnavigable streams is the same, in respect to the presumptions that arise from grants bounded thereon; and the general principle is, that there must be a reservation or restriction expressed or necessarily implied, which controls the operation of the general presumption, and makes the particular grant an exception, or else the grant carries the grantee to the middle of the stream or highway: per NELSON, J., in Howard *v.* Ingersoll, 13 *Howard* 421.   In the elaborately considered case of Child *v.* Starr, 4 *Hill* 369, overruling Starr *v.*

Child, 20 *Wend.* 149, it was held by the court for correction of errors in New York, that lines running to a monument standing on the bank, and from thence running *by the river* or *along the river* do not restrict the grant to the bank of the stream: see also the note to Ex parte Jennings, 6 *Cowen* 536.

On the other hand, there are not wanting authorities to the effect that when the descriptive words are " by the side of," " by the margin of," or " by the line of" the stream, the underlying soil is excluded: 10 *Pickering* 249; 5 *Denio* 599; 6 *Mass.* 435.

But it was with a knowledge of such authorities, Judge LEWIS remarked, in Paul *v.* Carver, that the circumstance of being bounded by the *side* of a street, instead of the street itself, was entirely too insignificant to produce a result so inconvenient, and so contrary to the practice of the people.

And when it is considered, that the laying out and dedication of streets in a town, divests the proprietorship of the original owner —that every purchaser of a town-lot buys with reference to the existing highways—would not pay the price he does, if it were not for those highways—and yet, that power exists in the government to vacate every such highway—this doctrine becomes a most reasonable and necessary one.

Without it, any lot-owner who has built on the line of his lot, may be shut into his house without the possibility of stepping out, except he trespass on his neighbour.

It is not probable, that any lot in the borough of Norristown would have been paid for and built on in the manner it has been, if it were not for the understanding, that the owner was for ever to go out and come in on the ground in front of him. He may or may not have adverted to the precise phraseology of his deed— he may or may not have remembered the public right to vacate the street in front of him, but he has looked from the first to the ground of that street, for his means of ingress and egress; and we should carry consternation into that flourishing town, and into all our boroughs and cities, if we should tell the people that their rights in the streets which bound them terminate with the public franchise of passage.

Deeds may expressly exclude the streets, but unless they do, the implication is, from such terms as are found in this deed, that half the street is included. Unless we say this, we must reverse Paul *v.* Carver, and we see no ground for reversing or questioning a case so carefully decided. It can scarcely be said to be in conflict with the case of the Union Burial Ground, and though it is inconsistent with some extra state adjudications, it seems to us more worthy to be followed than they are.

Terms of description such as these, may be regarded, therefore, as having a technical meaning, and as importing a grant to the

[Cox *v.* Freedley.]

middle of the street, unless controlled by something else in the deed.

The only thing the learned judge found to control them was the word stakes. At the north-east corner of Egypt and Race streets, and at the south corner of Penn and Race streets, stakes are mentioned. These the learned judge considered fixed monuments. If they were such, they could not be *in* the street, any more than, in some of the water cases referred to, the marked trees or stakes could have stood in the middle of the stream.

Where surveys are bounded on streams or streets, the marks which denote them, if higher than the surface of the water or ground, must necessarily stand on the margin. Sometimes a stone and ring are planted beneath the surface, and then they are expected to be at the very corner or line.

But what sort of a monument is a stake? It is so unsubstantial, that in country surveys, it usually indicates a corner which the surveyor never visited, and which exists only on paper. Artificial boundaries which are meant to be fixed monuments, are made with more care than merely sticking a stake, which the next wind may blow over, which one of a thousand accidents may destroy, and which must rapidly decay, if not otherwise obliterated. So frail a witness is scarcely worthy to be called a monument, or to control the construction of a deed in so important a particular as that under consideration.

Nor can we regard the intention of the parties, as found by the jury, the true criterion of construction. There was no ambiguity on the face of the deed. The question raised was, what were the legal import and significance of the words employed by the parties? That was a question for the court, and not for the jury. The jury were no more to measure the legal effect of these terms, than they would be permitted to judge of words of inheritance or perpetuity in a deed.

The intention of the parties, as deduced from the language of the instrument, was the criterion of construction, and in making that deduction, the court would look at the circumstances in which the conveyance was made—at the fact that Mr. Freedley might naturally desire to retain the proprietorship of Race street for the protection of the head-race of his mill; and on the other hand, that Cox was buying town property with reference to surrounding streets. In reference to Freedley's interest in the head-race of his mill, the principle decided in Seybert *v.* Levan, 8 *Barr* 383, should not be lost sight of, in settling the construction of the deed; for if he retained the right to enter for repairs notwithstanding his conveyance, there would be less reason for restricting the descriptive words to the margin of the street.

The judgment is reversed, and a *venire facias de novo* awarded.