Matilda Bliem, Wife of Charles Bliem, *v.* John Daubenspreck, Charles B. Daubenspreck and F. D. Smedley, Appellants.

*Conveyancing—Describing lot as bound by a street.*

The rule that, where a public street or highway is called for as a boundary or monument in a deed, title passes to the grantee to the middle of the highway in the absence of a reservation or restriction expressed or necessarily implied, applies where the street or highway referred to has been opened or adopted by the law of the municipality, or the deed recognizes it as an existing highway. Paul v. Carver, 26 Pa. 223, followed. Union Burial Ground v. Robinson, 5 Whart. 18; Bellinger v. Union Society, 10 Pa. 135; Brooklyn Street, 118 Pa. 640, distinguished.

Argued Feb. 4, 1895. Appeal, No. 8, July T., 1894, by defendants, from judgment entered on a verdict for plaintiffs by the court of C. P. of Lehigh Co., June T., 1893, No. 8. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Affirmed.

Action of trespass to recover damages for closing an alley adjoining plaintiff's property.

The court directed a verdict for the plaintiff.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was in directing the jury to find a verdict for the plaintiff.

*T. F. Diefenderfer, C. J. Erdman* with him, for appellants.— It is well settled that, where an owner of ground, over which a municipality has located and ordained streets and alleys, but the same are yet unopened, sells lots and mentions such streets and alleys as boundaries in conveyances, such mention is mere matter of description: Union Society v. Robinson, 5 Whart. 118; Bellinger v. Union Society, 10 Pa. 135; Brooklyn Street, 118 Pa. 640.    The cases of Schenley v. Commonwealth, 36 Pa. 62; Trutt v. Spotts, 87 Pa. 339; Transue v. Sell, 105 Pa. 604; Ferguson's App., 117 Pa. 426, do not apply, because in all these cases the owners of ground sold lots in accordance with plans of their own or adopted by them and referred to in the conveyance.    Paul v. Carver, 26 Pa. 223; Cox v. Freedley, 33 Pa. 124, do not apply, because the street had been opened by the public authorities before the lot was sold.

*Milton C. Henninger*, for appellee, filed no paper-book.

OPINION BY MR. JUSTICE DEAN, July 18, 1895:

The plaintiff brings an action of trespass against defendants for closing an alley adjoining her property in the city of Allentown.    Liberty street was the northern boundary of the city; the streets and alleys, among them Hall Alley, running north and south, had outlet on Liberty street; on June 16, 1870, the councils, by ordinance, extended the city limits northwardly beyond Liberty street, and enacted, that all the North and South streets, at right angles to Liberty, between Fourth and Twelfth, should extend to the new city limit on the north, without change of course from their then location; that Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh streets should be sixty feet wide, Seventh, eighty feet, New street, fifty feet and all the others running in the same direction should be twenty feet, which last width would include Hall alley or

street, it sometimes being called street, but generally alley. At the date of the adoption of this ordinance, one Philip Reuter owned land on the north side of Liberty street, and Hall alley, when prolonged to the new northern boundary, cut through this land; on May 4, 1871, after Hall alley was thus laid out, but before it was opened, Reuter conveyed to Annie Nagle a building lot on the west side of the alley, but not naming it; he describes the lot as bounded on the south by Liberty street, and on the east by other land of Reuter, but the description was made to conform to a draft which had been adopted by Reuter, and the eastern line of the lot was in fact the western line of Hall alley. On Nov. 13, 1871, Reuter conveyed the land on the opposite side of the alley to Weikel and Seip; in this deed, he describes the line of Hall alley on that side as the western line of the lot. This land conveyed to Weikel and Seip, by sundry conveyances, in all of which the east line of Hall alley is the west line of the lot, became vested in Matilda Bliem, this plaintiff. The lots on each side of the street, Nagle on the west, and Weikel and Seip on the east, were fenced along the line of the alley, leaving a strip twenty feet wide between, which was used as a common, and to some extent as a public highway, down to 1887, when the city councils, by ordinance, changed the location of Hall street, north of Liberty street, to a point sixty feet east of its first location. This, in effect, was an abandonment by the city of the first twenty feet adopted as Hall alley. Reuter's heirs, assuming that it was not included by the description in either the Nagle, or Weikel and Seip deeds, then conveyed it to Martin and Diefenderfer, who sold to Smedley, one of defendants, who employed the Daubensprecks to construct a building upon it. Thereupon, Mrs. Bliem, the successor in title to Weikel and Seip, brought this suit, claiming that under her deed, which called for Hall alley, her lot extended to the middle of the alley; and further, as against Reuter or his grantees, it implied the right to have the alley kept open twenty feet wide forever.

The learned judge of the court below was of opinion that as the grantor, in his deed to Weikel and Seip, had described the land as bounding on an alley, that was a representation by him that an alley then existed, and even if the city afterwards abandoned it, as the land, at the conveyance to Weikel and

Seip belonged to Reuter, neither he nor his heirs, nor their grantees, could close it up; as the damage was only nominal, he directed a peremptory verdict for plaintiff in six cents damages, as a vindication of her right. And now defendants appeal, assigning for error the peremptory direction for verdict in favor of plaintiff.

The question is, what was the intention of Reuter, in his deed to Weikel and Seip, in bounding their lot by a line extending two hundred feet along Hall alley? He reserved to himself only what he did not convey to them; he could not convey to defendants' predecessors in title what he had not reserved. It will be noticed Reuter was the owner of the whole tract; on the 4th of May, 1871, he conveyed the lot opposite plaintiff's lot to Anna Nagle; on the 13th of November following he conveyed to Weikel and Seip, who, as subsequent purchasers, were bound to take notice of the conveyance to Mrs. Nagle; whether that carried her lot to the middle of Hall alley, as against the Reuters, we cannot decide on the facts; the description does not mention the alley, and the drafts are not before us; if it did not go to the middle of the alley then the half of the alley, at that point, would probably pass to the purchasers, Martin and Diefenderfer, under deed of 14th of April, 1888, the deed under which defendants claim. What may be the extent of their right to this half next Mrs. Nagle we cannot determine in this action; nor can we determine how far subsequent purchasers are bound by implied covenants, if any, in Reuter's deed to Weikel and Seip, when both they and Weikel and Seip had before them the record of Mrs. Nagle's deed when they purchased. But the deed to Weikel and Seip expressly describes Hall alley; the fact, then, is established and undisputed, that Reuter, in the deed to the predecessors in title of this plaintiff, adopted the alley as a boundary for her lot; then appears the further fact, that the fences along each side of the alley left between them and the twenty feet, which remained open, not only for use of the grantees, but for the public who chose to use it. The case, on its facts, comes directly within the ruling in Paul v. Carver, 26 Pa. 223. In that case one Lownes, in 1805, being the owner of a large tract of land called Barnfield, in Philadelphia county, by his will directed that a street fifty feet wide should be laid

out by the public or his heirs, through the property, in a line with Carpenter street, to be called " Tidmarsh " street. In 1827, part of Tidmarsh street was opened by the public author-ities. In 1835, the location of the street was changed, so as to make it correspond with the direction of the other streets in the city; then an act of assembly vacated that part of Tidmarsh street. In 1817, before any action with reference to the street had been taken by the public authorities, the original owners conveyed by deed to Mrs. Brinton a lot on north side of Tid-marsh street, and in 1836 she conveyed a part of the lot to Perry, by a line " along the northerly side of Tidmarsh, four hundred and one feet; " Perry executed a mortgage on the premises, on which the lot, by the description in the deed, was sold at sheriff's sale to Carver. This court held that Carver took title to the middle of the street, and the street having been vacated by law, he was entitled to possession; that where a street is called for as a boundary the title passes to the center of the street; a street is a single line; the thread of it is the monument or abuttal; the paramount intention of the parties, as disclosed from the whole scope of the conveyance, and the nature of the property granted, should be the controlling rule.

Here, the facts, that from the ordinance there was an exten-sion of Hall alley, and that lots abutted on the alley; the oppo-site lot of Mrs. Nagle, at least, fitting up to the alley, although it is not called for in her deed; then, the Weikel and Seip lot, on the other side, being expressly bounded by the alley, show the intention of Reuter, in this Weikel and Seip deed, not to reserve the alley as against Weikel and Seip. Although the city had not, so far as appears from the evidence, improved or ·worked upon this alley after the ordinance of June 16, 1870, and although, by ordinance, in 1887, it was abandoned, yet the first ordinance declared that Hall alley should extend continu-ously northward, as already established southward; after this ordinance, the deeds were made for the lots on each side, and for seventeen years it so remained open for the public who desired to use it. As is said in Paul v. Carver, supra, does any one suppose, from this deed, it was the intention of the grantor to reserve this narrow strip of ground, accessible only from each end? In Cox v. Freedley, 33 Pa. 124, the question again came before us; the court below thought, as the descrip-

tion called for stakes on the line of the abutting street, which was afterwards vacated, this demonstrated an intention to limit the grant to the edge of the street, but this court said, applying the rule in Paul v. Carver, supra, the grantee took to the middle of the street: "That the law, with respect to public highways and unnavigable streams, is the same in respect to the presumptions that arise from grants bounded thereon ; and the general principle is, that there must be a reservation or restriction expressed or necessarily implied, which controls the operation of the general presumption, and makes the particular grant an exception, or else the grant carries the grantee to the middle of the stream or highway." It is argued here, that the alley was but imaginary, wholly on paper, and Union Burial Ground v. Robinson, 5 Whart. 18, Bellinger v. Union Society, 10 Pa. 135, and Brooklyn Street, 118 Pa. 640, are cited as showing, in such cases, the mention of the street is mere matter of description.

In the first two cases cited, the streets were only plotted on paper; in Burial Ground v. Robinson, the words were "on south by Washington street, as the same may hereafter be opened,"—the street never was opened ; and a similar description was adopted in Bellinger v. Union Society ; in each case, the street had no existence at the date of the deed, and necessarily, the intention to convey without reservation of that which might never be used for street purposes was not manifest. Here the alley had been adopted by the law of the city more than a year before the deed, and the deed expressly recognizes it as an existing alley. The question is not, whether the city by proper municipal action had constituted the alley, in all respects, a city highway, but whether it was treated as one in fact by the grantor in his deed to Weikel and Seip, for that is a clue to his intention to reserve or grant without reservation the land to the middle of the alley. In Brooklyn street, supra, the question before us was not in issue ; in that case, the dispute was as to whether the grantor of lots on each side of a street laid out, but not opened, was entitled to damages when the street was actually opened ; it being argued, that the description of the lots operated as a dedication of the street to public use ; this court held, the appropriation of the street was by the municipality, and the description of the street in the deeds was not a dedication by the owner of the land.

But Hall alley was no mere paper or imaginary alley; it was recognized by the owner of the land as an existing alley when he executed his deed; besides, the alley was by formal ordinance declared an alley of the city; Reuter conformed the descriptions in his deed to the lines of it; the purchasers inclosed their lots by fences to accord with it; the lot owners, and the public thereafter, when they saw proper, used it; for years it so remained, until the municipality, by formal ordinance, changed its location, still retaining the name given it in the first ordinance and in the deeds.  To call this an imaginary alley is to disregard the facts, which conclusively show it to have been an established public alley from the date of its existence.

Whatever apparent conflict there may be in the cases, there is really none when the dissimilarity in facts indicating the intention of the grantor is noticed; the principle adhered to in all the cases is, that the intention is controlling and that, in bounding land by a street, it will be presumed the grant is to the middle of the street, unless the contrary be manifest from other words of the grant, or the subject of it indicates plainly a different intent.  Of Paul v. Carver, supra, it was said, subsequently, in Cox v. Freedley, supra:—" It was maturely considered and unanimously pronounced.  It was shown to be agreeable to the general principles of the common law, as laid down by chancellor KENT, and other text writers, and as they had been applied in numerous cases in England and our own country.  It was shown also to be sanctioned by the general sense and understanding of the people,—and that any doubt or denial of it would introduce intolerable inconvenience, confusion and litigation."

So, while we are of the opinion defendants were trespassers in erecting their building on the half of the alley next plaintiff's lot, and therefore there was no error in the judgment for nominal damages, yet on the facts now presented we decline to hold there was an implied covenant on part of Reuter that the alley should forever be kept open for the use of all his separate grantees, notwithstanding its abandonment by the city, We only decide, that from the description in the conveyance, and the subject of it, there was no reservation as against this plaintiff which would stop her line short of the middle of the alley.  This judgment vindicates her right to the half of the abandoned alley next her lot, and goes no further.

The judgment is affirmed and appeal dismissed.