[PHILADELPHIA, 1839.]

| 5wh 18, |
|---|
| 169 287 |
| 5 Wh 18 |
| 211 4 |
| 211 5 |
| 5 Wh 18 |
| 212 554 |
| 212 555 |

# THE UNION BURIAL GROUND SOCIETY *against* ROBINSON.

## IN ERROR.

In the year 1790 a street to be called Washington Street was laid out, in pursuance of an act of the legislature, through part of the District of Southwark. The street was never in fact opened. In 1828 the defendants, who were the owners of a piece of ground over which Washington street had been laid out, conveyed to the plaintiff a lot of ground, part of their larger lot, describing it in the deed as " containing in breadth on Prime street," (which ran parallel with Washington street and north of it) " thirty-one feet four inches, and in length southwardly between parallel lines running at right angles with Washington street, on the east line thereof ninety-eight feet six inches, and on the west line thereof seventy-three feet six inches, and two-thirds of an inch, be the same in depth more or less, to Washington street, where it contains in breadth east and west thirty-one feet : bounded on the north by the said Prime street; on the south by the said Washington street, as the same may hereafter be opened, &c. In 1834 an act of the' the legislature was passed to vacate and annul the said Washington street. *Held*, that the plaintiff did not acquire by his deed a title to any part of the soil of the said street, and consequently was not entitled to recover any part of it from the defendants.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action of ejectment, brought by John Robinson against " The Union Burial Ground Society of the City and County of Philadelphia."

The facts upon which the question in this action arose, are fully set forth in the case which was stated for the opinion of the Court below, as follows :

" It is agreed that the Union Burial Ground Society aforesaid by indenture duly executed and delivered, dated the 29th day of July, A. D. 1828, granted to Joseph Marshall, in fee simple, a lot of ground thus described therein, viz.: ' a certain lot or piece of ground composed of two adjoining lots situate on the south side of Prime street, in the District of Southwark, and county of Philadelphia, beginning at a distance of about forty-seven feet westward from the west side of a ' new street lately opened, leading from Prime street aforesaid to Federal street, and parallel with Delaware Fifth street, called Arabella street, containing in breadth on the said Prime street, 31 feet 4 inches, and in length southwardly, between parallel lines, running at right angles with Washington street, on the east line

thereof, sixty-eight feet two inches, and on the west line thereof, seventy-three feet six inches and two-thirds of an inch, be the same in depth more or less, to Washington street; where it contains in breadth, east and west, 31 feet—bounded on the north by the said Prime street, on the east by other ground belonging to the said party of the first part, on the south by the said Washington street, as the same may hereafter be opened, and on the west by other ground belonging to the said party of the first part, intended to be this day granted and conveyed to Thomas Bickerton and John D. Putron: Being part and parcel of a certain lot or piece of ground, which Thomas I. Wharton and Arabella his wife, by indenture dated the 11th February last past, and recorded, &c. granted to the said party of the first part in fee simple, together with all and singular the improvements, ways, streets, alleys, passages, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever, thereunto belonging or in any wise appertaining, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand, whatsoever of them the said party of the first part, in and to the same and every part thereof.' That the said Joseph Marshall, and wife, being in possession of the said lot of ground under the said deed, by indenture endorsed upon the aforesaid deed, duly executed and delivered, dated the twenty-second day of July, 1833—granted and conveyed the same unto the plaintiff, John Robinson, in fee simple, describing it as follows: 'All that the within described and granted lot or piece of ground composed of two adjoining lots, situate on the south side of Prime street, in the District of 'Southwark aforesaid, beginning at the distance of about forty-seven feet westward, from the west side of a new street lately opened, leading from Prime street aforesaid, to Federal street, and parallel to Delaware Fifth street, called Arabella street, containing in breadth on said Prime street, thirty-one feet; and in length or depth southwardly, between parallel lines, running at right angles with Washington street, on the east line thereof, sixty-eight feet two inches, and on the west line thereof, seventy-three feet six inches, and two-thirds of an inch, be the same in depth more or less, to Washington street, where it contains in breadth, east and west, thirty-one feet, being butted and bounded as in the said within indenture,· &c. is particularly set forth, together with all and singular the improvements, ways, streets, alleys, passages, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever, thereunto belonging and appertaining, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title and interest, property, claim and demand whatsoever of them the said Joseph Marshall, and Jane his wife, of, in and to the same.'

And it is further agreed that the said deeds be considered before the court as though they were transcribed in full upon this agreement.

(Union Burial Ground *v.* Robinson.)

That the said John Robinson by virtue of the last mentioned deed entered upon the aforesaid lot, and still remains in possession of it.

That the said Washington street mentioned in the said deeds as the southern boundary of the lot aforesaid, was laid out, of the width of fifty feet, under and by virtue of the act of the legislature of Pennsylvania, passed the 29th day of September, 1787, and contained in 2d Smith, p. 435-6, &c.; and is laid down in a certain chart constructed under the supervision of the commissioners appointed by the said act of the legislature, dated in the year 1790, and recorded in the recorder's office for the recording of deeds in the City and County of Philadelphia.

That the said street called Washington street, remained unopened in the possession of the defendants, and was vacated in the year 1834, by the commissioners of Southwark, who were authorised by the act of the legislature passed 10th April, 1834, section 12, to review and vacate so much of the said street as lay between Fourth street and the Passyunk Road.

Upon the said vacation, the Union Burial Ground Society remained as before, and are still in possession thereof. That notwithstanding the laying out of the said street, the Union Burial Ground Society aforesaid, had, and retained possession of the whole or so much of the same as lay beside and bounded on the south, the lot described above, including twenty-five feet adjoining it, for the recovery of which this action is brought; and that they still are in possession thereof.

If the court upon this statement of facts are of opinion that the right and estate of the Union Burial Ground Society aforesaid, to the soil of so much of the said Washington street (subject to the right of passage in the public) as bounds the aforesaid lot, up to the middle of the said street, passed by their deed to Joseph Marshall, and from Marshall to the plaintiff by his deed aforesaid, and that, therefore upon the vacation of the road, one half adjoining his lot up to the middle of the road became the property of the plaintiff, then it is agreed that judgment be entered for the plaintiff, as if upon a special verdict, with his costs of suit.

But if the court should be of opinion that no part of the interest, of the said Burial Ground Society, in the soil of the said highway, passed to the said Marshall, by their deed aforesaid, or that it did not pass from the said Marshall to the said plaintiff by his said deed to the said plaintiff, then in either case—it is agreed that judgment shall be entered for the defendant with his costs of suit."

Upon this case the District Court gave judgment for the plaintiff; whereupon the defendants sued out a writ of error from this court.

Mr. *St. G. T. Campbell,* for the plaintiffs in error, referred to the acts of assembly of 29th September, 1787, 10th of April, 1834, and 24th February, 1820, and cited the case of *Seventeenth street New*

(Union Burial Ground v. Robinson.)

*York*, (1 *Wendell*, 262.) Case of *Lewis street*, (2 *Wendell*, 472.) *Livingston* v. *The Mayor, &c. of New York*, (8 *Wendell*, 85.) *Wyman* v. *The Mayor of New York*, (11 *Wendell*, 486.) *Cooke* v. *Green*, (11 *Price*, 736; S. C. 5 *Eng. Exch. Rep.* 216.) *Jackson* v. *Hathaway*, (15 *Johns.* 117.) *Leonard* v. *White*, (7 *Mass. Rep.* 6.)

Mr. *M'Ilvaine*, contra, cited 3 *Kent's Commentaries*, 433; *Storer* v. *Freeman*, (6 *Mass. Rep.* 435.) *Dunlap* v. *Stetson*, (4 *Mason*, 365.) *Harris* v. *Elliott*, (10 *Peters*, 25.) *Jackson* v. *Louw*, (12 *Johns.* 252.)

The opinion of the Court was delivered by

KENNEDY, J.—From the case, as stated, it appears that in the year 1790, a street, called Washington, of fifty feet in width, was laid out, inter alia, through land, subsequently acquired and owned by the plaintiffs in error, lying in the District of Southwark, by commissioners appointed for that purpose, by an act of the legislature, passed the 29th of September, 1787, (2 *Smith's L.* 435.) This street was never opened through the land of the plaintiffs in error; and according to the sixth section of the act, it would seem, could not have been without a previous order made and 'granted by the supreme executive council, directing it to be done, which does not appear to have been applied for or obtained. The plaintiffs in error however, having become the owners of the land in dispute, on the 29th of July, 1828, by their deed of that date, sold and conveyed in fee simple to Joseph Marshall a lot of ground, part of the land then owned and held by them, through which the street was laid out, calling for it as a boundary on the south side thereof. The lot thus conveyed is described in the deed as follows, viz.: " a certain lot or piece of ground, composed of two adjoining lots situate on the south side of Prime street, in the District of Southwark and county of Philadelphia, beginning at a distance of about forty-seven feet westward from the west side of a new street lately opened, leading from Prime street aforesaid to Federal street, and parallel with Delaware Fifth street, called Arabella street, containing in breadth on said Prime street thirty-one feet four inches, and in length southwardly between parallel lines, running at right angles with *Washington street*, on the east line thereof *sixty-eight feet two inches*, and on the west line thereof *seventy-three feet six inches* and *two-thirds of an inch*, be the same in depth more or less, *to Washington street;* where it contains in breadth, east and west, *thirty-one feet;* bounded on the north by the said Prime street, on the east by other ground, belonging to the said party of the first part, *on the south by the said Washington street, as the same may hereafter be opened*, and on the west by other ground belonging to the said party of the first part; intended to be this day granted and conveyed to Thomas Bickerton and John Putron: being part and parcel of a certain lot of ground,

which Thomas I. Wharton and Arabella his wife, by indenture dated the 11th of February last past, and recorded &c., granted to the said party of the first part in fee simple: together with all and singular the improvements, ways, streets, alleys, passages, waters, water courses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the reversions, remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said party of the first part, in and to the same and every part thereof, &c." Joseph Marshall having thus become the owner of the lot, so conveyed to him, by his deed, executed by himself ,and his wife, on the 22nd day of July, 1833, conveyed it with its appurtenances in fee to the defendant in error: after which, that part of Washington street, which was made the boundary of it, never having been opened, and being then as well as now in the possession of the plaintiffs in error, was vacated and annulled under the authority of the act of the legislature, passed the 10th of April, 1834. The defendant in error, who was the plaintiff below, conceiving himself invested with the right and the title to one half of the ground covered by the location of Washington street, as far as it was made the boundary of his lot and conveyed by the plaintiffs in error to Marshall, instituted this ejectment to recover the possession thereof; which was then and still is withheld from him by the plaintiffs in error, who claim also to be the owners of it; because, as they say, they never parted with their right to it. The only question then is, have the plaintiffs in error by the terms of their deed of conveyance to Joseph Marshall, parted with their right to the soil to the middle of Washington street, so far as it is thereby made the boundary of the lot of ground therein described and conveyed? The defendant in error, being the plaintiff below, claimed to recover the land demanded, upon the ground that the owner of land, through which a highway or public street is laid out, either by his own act or that of the law, where he conveys the land afterwards on either side thereof, making it the boundary of his grant, is presumed in law to have conveyed all his right therein to the middle of such highway or street; so that if he owned the land in fee, and conveyed in fee by metes and boundaries therein mentioned, and among other boundaries, calls for the highway or street as one, the fee to the middle thereof will be considered as transferred. This doubtless may be regarded as a general principle of the law in regard to conveyances of land lying in the country; yet it is only so because the law presumes that the parties intended it should be so. But being a presumption merely, it will be repelled by any thing appearing on the face of the deed which goes to show that such was not the intention of the parties. That the whole of the road or street may be excluded, by express terms from the operation of the conveyance, is clear and cannot be denied: as where the land conveyed

is described as bounded by the side or edge of the highway or street, without using negative terms to exclude it; 3 *Kent's Comm.* 434, (3d ed.) So the presumption of law may be rebutted, when the description is so specific as to show that it was not intended to pass a right to the soil further than to the edge of the highway, by which the land conveyed is bounded. This seems to be fairly inferrible from the qualified manner, in which Chancellor KENT has laid down the general rule on this subject in the last edition of his commentaries, (3 vol. 433-4;) and he seems disposed to carry the presumption of law, in this respect, quite as far as either the authorities, the practical understanding of the parties, or the sense of mankind, in general would appear to warrant. His words are, " it may be considered as the general rule, that a grant of land bounded upon a highway or river, carries the fee in the highway or river to the centre of it; provided the grantor at the time owned to the centre, and there be *no words* or *specific description* to *show a contrary intent.*" In *Tyler v. Hammond*, (11 *Picker. Rep.* 193,) it was held by the Supreme Court of Massachusetts, that a description of a parcel of land in a deed conveying it, which set it out by bounds and admeasurements in *feet* and *inches*, with less nicety than in the case before us, was so *specific*, as not to admit of being enlarged by and according to the words which immediately followed; which were these, " be the same more or less, or however otherwise the same is bounded, or reputed to be butted and bounded; being the mansion house and *land thereto belonging*, improved by the late Royal Tyler at the time of his decease:" though had the particular description been less specific or the general words stood alone, the conveyance, in the opinion of the court would have passed considerably more land. Mr. Justice WILDE, in delivering the opinion of the Court, page 213 of the book quoted, says, " when the lot conveyed is described by metes and bounds, and they clearly exclude the road, I apprehend it cannot be maintained that any part of the soil and freehold of the road will pass. If by the terms of the description the road is *necessarily excluded*, it is equivalent to an express declaration that no part of the road is intended to be conveyed : and it is perfectly clear that the fee in the road cannot pass as appurtenant to the land adjoining." What is here said is particularly applicable whenever the quantity of land conveyed is small, and its extent is described with great nicety; as in all conveyances almost of city or town lots or parts thereof. And in the present case the ground intended to be conveyed is described with a remarkable, if not very unusual degree of nicety and minuteness, as if it were intended to preclude all possibility of including any more than came within the metes and bounds, as set out, not merely in feet and inches, but limited even to the very fraction of an inch. The line running from Prime street southwardly *to Washington street* on the east side of the lot, is described as being in length sixty-eight feet two inches, and the

parallel line on the west side thereof, from the same street to the same, as being in length seventy-three feet six inches and *two-thirds of an inch.* Now how is it possible in such case, without disregarding the plain and unequivocal meaning of language, to say that the defendant in error is entitled to have his grant carried to the middle of Washington street, a distance of twenty-five feet, throughout its whole width, beyond the express limits of it, and beyond what he bargained for. If his claim, in this respect, were conceded to him, this would clearly be the case ; because it is not pretended, that he has not got his sixty-eight feet two inches in the length of his line on the east side of his lot, and his seventy-three feet six inches and *two-thirds of an inch* in the length of his line on the west side, by stopping at the northern edge of Washington street : so that in claiming to go with his right, under the deed of conveyance from the plaintiffs in error, to the middle of Washington street as it was located, he wishes to have the whole width of the grant, under it, extended twenty-five feet beyond the express limits contained in the deed. The minute accuracy of description evidenced by the deed, and the additional quantity of ground, which would be embraced by extending the boundaries of the conveyance beyond that description to the middle of Washington street being so great in its relative proportion to the quantity contained within the express limits, render it altogether impossible to believe for a moment that it would not also have been expressly included, had it been intended to be conveyed.

It is needless to go into an inquiry here, as to the extent of the interest, or whether any at all could have been acquired, in the soil of the street, by the District of Southwark, and the nature of the authority over it, that might or would have become vested in them, if they had taken possession of and opened it. Before they could have done this, they might have been compelled first, under the provisions of the seventh section of the act of 1787 to have paid the plaintiffs in error, or those from whom the latter derived their right to the land, upon which the street was laid out, the value of all the damages, which they were likely to sustain in their improvements thereon made anterior to laying out of the street, by the subsequent opening of it. Seeing then that it never cost the district any thing; and that part of the street, in question here, having been vacated and annulled by the same authority, under which it was laid out, before any use or possession was had of it by the district or the public, it is clear that the district cannot be said to have any right now, either to the soil or to a passage over it. Indeed it may be observed, that it would rather appear not to have been the intention of the legislature, under the act of 1787, to take from the owners of the lands within the district, upon which streets, roads, lanes or alleys might be laid out and opened in pursuance thereof, any thing beyond what was necessary to make such streets, roads, lanes and alleys answer

the purposes for which they were designed, and to secure to the public the full enjoyment of them as such.

Had the street here been laid out and dedicated to public use, by the owners of the land at the time, through which it was located; and the lot afterwards been sold and conveyed by them or their assigns, as bounded by it, possibly a different question might have been involved in the transaction from any that can be made to grow out of this; though I do not see that it could have been raised very well in this form of action: and perhaps not in any form of action exclusively between these parties. In case of a lot, lying within the city of New York, being so sold, it seems to be held that the fee of the street remains in the owner of the land laying it out, subject however to an indefeasible privilege vested in the purchaser of the lot to a right of way on the street as an easement; which is considered as being founded upon an implied covenant contained in the deed on the part of the grantor, from the circumstance of his making the street a boundary therein, according to a map or plan made by him designating it as such. The street is also considered by means of the sale and the map, as *dedicated to the public*, by the vendor, when the municipal authorities shall think proper to open and improve it for that purpose. See the matter of *Lewis street*, (2 *Wend. Rep.* 472.) *Livingston* v. *Mayor of New York*, (8 *Wend. Rep.* 85.) *Wyman* v. *Mayor of New York*, (11 *Wend.* 486.) The cases also of the City of *Cincinnati* v. *Les. of White*, (6 *Peters*, 431,) and the *Trustees of Watertown* v. *Cowen*, (4 *Paige's Ch. Rep.* 510,) lay down the rule, that if the owner of lands in a city or village lays the same out in lots and streets, and sets apart ground for a public square or common, it is a dedication of the streets or square to the public, of which the grantees cannot be deprived. And Mr. Justice Thompson, who delivered the opinion of the Court in the first of these two cases, seems to think that streets in a town or city may require a more enlarged right over the use of the land, in order to carry into effect the purposes intended, than may be necessary in an appropriation for a highway in the country; that even the fee itself may be held to remain in abeyance, until the city or town should become incorporated, and a competent grantee thus created to receive it, when necessary to effect the end and design of the dedication or appropriation. 6 *Peters*, 438-9.

The judgment of the Court below must be reversed, and judgment rendered by this Court for the plaintiffs in error.

Judgment accordingly.