# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Fitzell, Appellant, v. Philadelphia.

*Road law—Widening street—Damages—Easement—Dedicated street—Plotted street—Deed—Boundaries.*

Where a deed calls as a boundary a street actually opened, of the width of fifty feet, but plotted on the city plan as of the width of sixty feet, the grantee takes a fee in the additional ten feet in the front of his lot abutting on the street, but there is no implied covenant on the part of the grantor that the grantee shall have an easement in the ten feet in front of other adjoining land abutting on the street, and not conveyed by the grantor. In such a case when the city actually widens the street, the grantor is entitled to damages for the ten feet in front of the land still owned by him.

Where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property, and the other res gestæ of the transaction.

When a municipal government lays out streets on the land of a private citizen, it is not the act of the owner in any sense, and hence there is no necessity for an implication of a covenant against the owner to give his land to the public without compensation.

Argued Jan. 3, 1905. Appeal, No. 288, Jan. T., 1903, by plaintiffs, from order of C. P. No. 1, Phila. Co., Sept. T., 1902, No. 791, dismissing exceptions to report of referee in case of Robert W. Fitzell and Joseph Fitzell v. Philadelphia. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Exceptions to report of referee, James W. King, Esq.

The facts appear by the opinion of the Supreme Court.

The referee found that the plaintiffs had suffered no damages and he therefore assessed no benefits.

*Errors assigned* were in dismissing exceptions to report of referee.

*M. J. O' Callaghan*, for appellants.—The deeds offered in evidence show that the reference to Third street was for a mere convenience in the matter of description, and conveyed no easement to Fitzell's grantees, nor any implied easement in either the grantees or the city of Philadelphia: Washburn on Easements, 95; McDonald v. Lindall, 3 Rawle, 492; Francies's App., 96 Pa. 200; Ogden v. Grove, 38 Pa. 487.

*John H. Maurer*, assistant city solicitor, with him *George E. Fili* and *John L. Kinsey*, city solicitor, for appellee, cited: Cole v. Philadelphia, 199 Pa. 464; O'Linda v. Lothrop, 38 Mass. 292; Lemay v. Furtado, 182 Mass. 280 (65 N. E. Repr. 395); Brooklyn Street, 118 Pa. 640; Hancock v. Philadelphia, 175 Pa. 124; Whitaker v. Phœnixville Boro., 141 Pa. 327; Gamble v. Philadelphia, 162 Pa. 413.

OPINION BY MR. JUSTICE DEAN, March 6, 1905:

In 1832 Third street of Philadelphia was plotted on the city plan and confirmed by the court of quarter sessions as fifty feet wide.    In one of the districts, now forming part of the consolidated city, it was placed on a borough plan as fifty feet wide.    In 1860 and 1886 it was confirmed as of this width in the present plan of the city.    In 1888 Robert W. and Joseph Fitzell, these plaintiffs, became the owners in fee of a tract of land along Third street from Ontario to Westmoreland street, subject to the easement, the street being then plotted as fifty feet wide. In that year they dedicated Third street as plotted fifty feet wide between Ontario and Westmoreland streets.    They also opened between these streets, two narrower streets, Wensley and Thayer, running at right angles to an opening into Third street.    While the Fitzells were still owners of the whole tract, the city added ten feet to the width of Third street, plotting it on the city plan as sixty instead of fifty feet and actually

opened the street that width in July, 1901. In 1897 the Fitzells had conveyed five lots of ground along Third street to five different owners, the five lots aggregating on Third street 250 feet; this, however, still left in the Fitzells the ownership in fee of 188 feet fronting on Third street and cornering on Third and Westmoreland streets, not touched by any express description of the lots conveyed in 1897.

The street was not widened or the ten feet actually appropriated by the city until July, 1901. "The time of the actual opening" (see Whitaker v. Phœnixville Borough, 141 Pa. 327), "is the time the law fixes for estimating the damages." The plaintiffs being still at the date of the opening the actual owners in fee of the 188 feet fronting on Third street, claimed damages for the appropriation of the ten feet for that width. The learned referee finds as a fact that they are still the owners of that strip 188 feet by ten feet, but he asks, have they by reason of the conveyances in 1897 of the lots fronting on Third street plotted to be widened, impliedly covenanted with their grantees to give them an easement on Third street sixty feet wide between Ontario and Westmoreland? And he answers, such was the implied covenant; therefore, plaintiffs have practically sustained no damages because the city appropriated the ten feet as an easement for the population of the whole city, that is, as to damages he invokes in favor of the city the doctrine of de minimis.

Assuming, as the referee properly assumes, that by bounding the lots on Third street then plotted on the plan, implied an easement sixty feet wide the width of the plotted street in front of their lots, it also implied much more. It carried with it the covenant of an easement sixty feet wide on the entire street between Ontario and Westmoreland streets. The lots conveyed, with but slight difference in the words naming Third street as the boundary, are substantially the same as concerns that line. They are "situate on the east side of Third street parallel with and along the east side of Third street," and so with each description. There is no reservation of any part of the street by the grantors nor is there mentioned any fixed monument, natural or artificial, which would stop the right-angle line of the lot at the outer line of Third street. Clearly, under all our authorities, the implied covenant in the

conveyance was the fee to the middle of Third street as then opened; for it is immaterial how wide the street was at the date of the conveyance by the description in the deed, whether the street was fifty feet wide as then opened or sixty feet as plotted in the city plan, the grantees took a fee in the ten feet not yet opened and to the middle of the opened street which was only as yet fifty feet wide. The only thing that could be said is that the fee in the fifty-foot street is already subject to the public easement, while that in the ten feet was not yet so subject so far as concerned actual use but might be so subject in the future.

The leading case in this state enforcing this general principle is Paul v. Carver, 24 Pa. 207, decided in 1855; it is followed down to Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92, decided in 1897, probably in number twenty cases, all of them adhering strictly to the same principle. The large number of cases since are to be ascribed to two causes, first, Paul v. Carver, was apparently inconsistent with two earlier cases, Union Burial Ground Society v. Robinson, 5 Wharton, 18; Bellinger v. Union Burial Ground Society, 10 Pa. 135, thus making the law confusing to the minds of the profession; and then, second, Paul v. Carver only held that the fee to the middle of the highway passed to the grantee unless the intention of the grantor to limit it by the outer line of the highway clearly appeared. Many attempts to so limit it by evidence dehors the deed in subsequent cases were made, but the rule has finally settled down to this, that to so limit there must be an express reservation, or the lines must be stopped short of the middle of the street or highway by a permanent natural or artificial monument. This brings us to the question involved in this issue.

Where a traveled street has been opened fifty feet wide but is plotted on the city plan as sixty feet and the grantors convey five lots aggregating 252 feet fronting on the street at the north end thereof as a boundary line, and still own 188 feet fronting on the same street at the south end thereof, what is the grantors' implied covenant as to the width of the street on the part still owned by them? As we have seen their covenant with their grantees is, that as to their lots, they take a fee to the middle of the street, and that they front on a highway

fifty feet wide, for it is there of that width before their eyes. But is there an implied covenant on the part of the grantors that the street is sixty feet wide in front of their unsold lots? Taking the admitted facts in the case we cannot see, that the covenants extended further than, that Third street was fifty feet wide from Ontario to Westmoreland street; that was its width when the deeds were delivered; the covenant was in effect that the grantors would not obstruct it for that width or otherwise interfere with their grantees' free use of it; the street is there now of that width; the easement of the grantees as part of the public has been in no way restricted. But the street was plotted on the city plan ten feet wider. This fact, however, in no sense implied a covenant that the city would some time in the future add ten feet to the width. The city was not bound to actually widen the street after plotting it; nor did the grantors impliedly covenant that it would do so; this was beyond their power. Their covenant does not embrace any act of the municipality in the future; it may abandon its apparent intention to at some future date appropriate the additional ten plotted feet as part of the public easement or it may vacate the whole street. But the grantors have not expressly or impliedly covenanted that it would do either; except for the legislation which deters them from building on the ten-foot strip after it has been plotted on the city plan, it is as fully theirs as before. Why should their covenant with their grantees that the latter should have an easement on Third street fifty feet wide be enlarged to include ten feet they never had conveyed to anybody? We do not concur with the learned referee in his statement, that the philosophy of the law warrants the implication of a covenant with the grantees of an easement to them on the ten feet of land unsold by the grantors.

The law is plainly otherwise and supports the contention of the appellee that where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property and the other res gestæ of the transaction. This principle is recognized in Union Burial Ground Society v. Robinson, 5 Wh. 18, and has never been doubted;

many remarks have been made in subsequent cases as to
other features of this case inconsistent with the judgment in
that case, but the controlling principle has never been ques-
tioned. Paul v. Carver expressly recognizes it as good law, but
Justice LEWIS distinguishes it from the case before him. And
in Cox v. Freedley, 33 Pa. 124, Justice WOODWARD distin-
guishes the case from the one before him. In no case that we
have found has the principle as we have quoted it been over-
ruled or departed from. The implied easement sought to be
attached to this grant cannot be found in the surroundings of
the parties, for they got an easement on the whole of Third
street fifty feet wide in both directions; they got the fee of
the ten-foot strip in front of their lots as then plotted on the plan;
any implied covenant of an easement beyond would be wholly
unwarranted by anything in the nature of the grant or the
surroundings at its date. The cases cited by the referee as by
analogy warranting the implication of an easement on the ten feet
still owned by the grantors are not applicable. Brooklyn Street,
118 Pa. 640, was the case of a lot bounded by a street laid out
but not yet opened; it was held that the grantor's implied cov-
enant was of a street corresponding with the one in the deed.
Here a fifty-foot street corresponding with the one in the deed
actually opened.

In Whitaker v. Phœnixville Borough, 141 Pa. 327, the
owner had conveyed an adjoining lot fronting on an avenue
thirty feet distant from the center line of the same. It was
held that under this description the fee of the bed of the street
remained in the grantor at the time of the assessment of dam-
ages, but as he had conveyed a frontage on the street which
affected the value of the bed of the street, that should be con-
sidered in the assessment of damages. In the case before us
there was no conveyance of a frontage on the unsold lots. In
Gamble v. Phila., 162 Pa. 413, the unopened street was desig-
nated as an existing street and it was held that the grantor
had estopped himself from denying the existence of such a
street so designated by his conveyance. And so with other
cases cited by appellee, they have no application to these pe-
culiar facts. As suggested by the referee, there is no case in
which it is held that the grantor by a conveyance of certain
lots fronting on one end of a public street, has thereby by im-

plication practically granted to the public an easement of an additional ten feet on the other end of a street where he had sold no lots.

As is said by Justice GREEN in Brooklyn Street, 118 Pa. 640 : " When a municipal government lays out streets on the land of a private citizen, it is not the act of the owner in any sense, and hence there is no necessity for and implication of a covenant against the owner to give his land to the public without compensation." The city has appropriated 1,888 square feet of plaintiff's land for a public street ; assume that under the statute they cannot build upon it since it was put upon the city plan and thereby swell damages, but they have not lessened its value by private grant of an easement. Their damages are substantial and capable of compensation and on that basis they should be assessed. The judgment of the court below is reversed and it is directed that a rehearing be held before the referee and plaintiff's damages be assessed in accordance with this opinion.