# Hettrick *v*. Eby, Appellant.

*Road law—Alley—Obstruction of alley—Damages—Deed—Reservation in deed.*

Where property is purchased that has been subjected to the easement of an alley in existence at the time the property adjacent thereto was owned by a common grantor and reserved in the conveyances of adjoining lots with an understanding with the common grantor that the alley should be open for continuous use, and the alley has been used continuously by the public from the date of such ownership to the date of purchase and buildings had been erected on the land purchased, conforming to the lines of the alley, the purchaser is affected with actual notice of the alley's existence and the property purchased will be subject to the easement, although no reservation of the alley appears in the purchaser's deed.

The measure of damages for the obstruction of an alley is the cost of restoring the property injured to its former condition, unless such cost would exceed the value of the property, in which case the value is the measure of damages.

Argued Oct. 25, 1915. Appeal, No. 103, Oct. T., 1915, by defendant, from judgment of C. P. Northumberland Co., Sept. T., 1913, No. 126, on verdict for plaintiff in case of Precilla Hettrick v. Emma L. Eby. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass to recover damages for the obstruction of an alley located on the southern end of five contiguous lots in Shamokin Borough. Before CUMMINGS, P. J.

From the record it appeared that the lots in question were bound on the north by Spruce street on the east by Carbon run on the south by the alley in question and on the west by Fifth street. They originally fronted on Fifth street but were replotted to front on Spruce street. The court charged in part as follows:

On the first day of January, 1889, the title to these lots was in William H. Eby and Cornelius Feese. On that same day they executed a deed to Conrad Rebuck

for the eastern portion of that block as laid out. These lots ran from Fifth street to Carbon street; in other words, they run from east to west between Fifth street and Carbon street. Afterwards these lots were changed, and as they now run, from Spruce street to the southern end of the alleged alleyway and their fronts now are on Spruce street. The lots were simply cut the opposite way from what they were originally laid out.

In the deed from William H. Eby and Emma L., his wife, Cornelius Feese and Ellemina, his wife, to Conrad Rebuck is contained the following provision: "Provided, however, that an alley ten feet wide must be kept open along the southern line of the same by the parties hereto." You will recollect that the southern line of these lots, or the lot described in this deed is between lot number five and lot number six in block numbered eighty-two.

On the 26th day of January, 1889, William H. Eby and Emma L. Eby, his wife, Cornelius Feese and Ellemina, his wife, deeded to Robert C. Garman a portion of lots numbers one, two, three, four and five in this block, which deed also contains the following provision: "Provided, however, and it is hereby understood that an alley ten feet in width along the southern line of the above described piece of ground shall be kept open forever."

On the 26th day of January, 1889, William H. Eby and Emma L., his wife, and Cornelius Feese and Ellemina, his wife, deeded to Elias Malick part of lots numbers one, two, three, four and five in block numbered eighty-two, the same being a part of lot numbered eighty-two, the southern part being the line between lots numbered five and six as they originally existed. In this deed is also the provision: "Provided, however, and it is hereby understood that an alley ten feet in width along the southern line of the above described piece of ground shall be kept open forever."

On the 13th day of September, 1889, Conrad Rebuck and Christianna, his wife, by their deed deeded to Elias

Malick and Robert Garman, a portion of block numbered eighty-two that they had purchased from Eby and Feese, which deed contained no provision or reservation whatever.

On the 4th day of March, 1891, Elias Malick and Anna, his wife, deeded to Robert Garman a part of block numbered eighty-two, which had been deeded to them by Conrad Rebuck and Christianna, his wife, which deed contains no provision or reservation whatever.

On the 13th day of April, 1894, Robert C. Garman and Catharine, his wife, by their deed deeded to Precilla Hettrick a part of block numbered eighty-two, this being the property now claimed and proven to be owned by Precilla Hettrick the rear end of which is between lots five and six. This deed from Garman to Mrs. Hettrick contains no reservations.

On the 11th day of June, 1894, the clerk of the Orphans' Court, by direction of the Orphans' Court of Northumberland County, made and executed a deed to Mrs. Emma L. Eby, the defendant in this case, for the western end of block numbered eighty-two of these lots, which lot is described in the deed, the southern end of which is the line between lots five and six in block numbered eighty-two.

I call your attention, specially, to these deeds in order to show the title to the lots along this alleged alleyway. The deeds to which I have called your attention, I believe, cover the entire length of the alleged alleyway or the land between Fifth and Carbon streets.

Mr. Gillespie. If your honor please, I would say, there is no reservation in the deed executed by the clerk of the Orphans' Court to Mrs. Eby.

The Court. There is no reservation in the deed executed by the clerk of the Orphans' Court to Emma L. Eby.

[The plaintiff contends, and asks you to render a verdict in her favor, that there was at the foot of the lots as they now are an alleyway reserved in the deeds to the

different parties from Eby and Feese and that there was a dedication to these lots of this ten-foot alleyway, if there was one, by Eby and Feese and they allege it was to be kept open forever, the alleyway to be from Carbon street through to Fifth street. The plaintiff asks you to believe that state of facts and render a verdict in her favor for the reason, as she says, of the reservation in the deeds given by Eby and Feese to these different parties; and, in addition, as some evidence of a dedication, that the alleyway had been traveled by vehicles and foot-passengers or pedestrians for a long time. She further contends that at the time of the alleged purchase, or about the time of the alleged purchase of Elias Malick, of one of these lots, he met Feese and Eby, the then owners of the property, on the ground and had a conversation with them and that it was then said that there was to be reserved and kept open there a ten-foot alleyway which was to run from Carbon street to Fifth street.

Now, I say to you, if you are convinced from the evidence in this case that it was the intention of Eby and Feese, the original owners of these premises, to dedicate and give to the use of the prospective purchasers and the general public the use of ten-foot alleway, and that they did give it and open it, and it was traveled by the public, then that would constitute a dedication of that alley and the general public would have a right to the use of it.] (3)

[While there was no reservation in the deed from the clerk of the Orphans' Court, reserving a ten-foot alley, so far as the property of Emma L. Eby is concerned, and that being the point in question here, the plaintiff alleging that she had closed the alleyway, yet Mrs. Eby was the wife of William H. Eby, one of the original owners and joined with him in the deed and was expected to know the contents of a deed which she signed. So, I say to you, that if you believe, taking into consideration the deeds reserving, as they do, a ten-foot alley, and taking into consideration all the testimony in the

case, that it was the intention of Eby and Feese to dedicate a ten-foot alley and make it a public alley for the use of the public clear through from Carbon street to Fifth street, that Emma L. Eby would be bound by such dedication in the deed from William H. Eby, her husband, and Cornelius Fees, she having been a party to the deed, and, in addition to that, had an opportunity before her purchase of this property to see what took place on the ground, that, in my opinion, would be notice to her of the existence of a ten-foot alleyway; that is, if you believe that Eby and Feese originally intended to and did dedicate a ten-foot alley to the public. A dedication of a portion of this alleyway would amount to nothing; it would not amount to a public alley because a public alley must have an inlet and an outlet—it must be open at both ends. So it is the dedication of the whole alley or none.]    (4)

Now then the defendant contends that there was no dedication, no intention of Eby and Feese to dedicate an alley along the foot of these lots for the benefit of the property holders and the public. They say to you that the reservation in the deed was simply a reservation, permitting Mr. Eby and Mr. Feese to pass over the property which they sold, and they did not intend at any time to dedicate this alleged alley as a public alley. They produced witnesses who testified that this alleged way for a long time was what is commonly known as a commons, where everybody ran over it and were permitted to go, and upon the building of the Sherman house the barn was built immediately afterwards, and while he set his barn back, leaving ten feet open, yet he did that for his own convenience to get in to his own barn and go over the property that he reserved. In order to show you and convince you that there was no intended dedication they produce witnesses who have testified to there having been a gate put up at the barn on the Fifth street end of the alley, he reserving the property for himself and merely for his own convenience; that

HETTRICK *v.* EBY, Appellant.

numerous persons saw the gate there; that it was put up before Mr. Eby's death, and there was no intention whatever on his part to dedicate the alley to the public.   That while there were a few people passed over it, and may have been an occasional wagon went over it for the purpose of delivering coal to some of the properties there, yet it was only by permission of Mr. Eby and Mr. Feese that that was done.   If you believe, from all the evidence in the case, that there was no intention on the part of Eby and Feese to dedicate and give to the general public this ten-foot alleyway, and the facts were as alleged by the defendant, that they simply intended to keep a right of way over the alleyway for himself, and the gate was put there by him, then, of course, it would not be a public alleyway and the plaintiff could not recover.

Verdict and judgment for plaintiff for $35.00.   Defendant appealed.

*Errors assigned,* amongst others, were (3, 4) portions of charge as above quoting them.

*J. W. Gillespie,* with him *J. Mal. Gillespie,* for appellant, cited as to the reserve of proof: Andreas v. Steigerwalt, 29 Pa. Superior Ct. 1; Stiffler v. Retzlaff, 20 W. N. C. 303; Saccone v. West End Trust Co., 224 Pa. 554; Weiss v. South Bethlehem Boro., 136 Pa. 294; Miller v. Mackey, 204 Pa. 345; Coward v. Llewellyn, 209 Pa. 582; Siddall v. Philadelphia, 225 Pa. 55.

*W. Lloyd Snyder,* with him *W. H. Unger,* for appellee, cited: Corey v. Edgewood Boro., 18 Pa. Superior Ct. 216.

OPINION BY KEPHART, J., December 20, 1915:

William H. Eby and Cornelius Feese in 1878 were the owners of five contiguous lots of ground in the Borough of Shamokin.   The lots fronted on Fifth street and extended in an easterly direction to Carbon street.   Eby

and Feese replotted the lots and fronted them on Spruce street. In 1889 they sold a portion of these lots to Elias Malick, the deed of conveyance using the following language: "It is hereby understood that an alley ten feet in width along the southern line of the above described pieces of ground shall be kept open for ever." On this same date the same grantors sold a portion of the lots to Robert C. Garman, the deed containing language similar to that in the deed above recited. Other conveyances containing similar reservations were made by the same grantors. In 1889, Rebuck, one of these grantees, sold part of these lots to Malick and Garman without mentioning the alley. Malick conveyed his interest to Garman who then conveyed a lot to the plaintiff in this case, the deed containing a reservation of the alley. Feese and Eby, after selling the above ground, owned the western part of these lots which fronted on Spruce street fifty feet, extending back an even width one hundred and twenty-five feet, and Feese subsequently sold his interest to William H. Eby. Eby died and his lot was sold at Orphans' Court sale for the payment of debts and purchased by his wife, Emma L. Eby. The conveyance, by virtue of these proceedings, is silent as to the alley at the southern end of this piece of ground. Appellant contends that inasmuch as no mention of the alley was made in the deed to her, the land was not subject to the easement. The difficulty with this position is that at the time the conveyance was made to Garman by Eby and Feese an alley from Fifth street to Carbon street was opened and used and was continuously used by the public from that time up to the time the appellant secured her title. She, therefore, had actual notice of its existence. Under such circumstances the law implies notice. Without this, appellant must have known of the alley, as the wife of Eby she joined in all the conveyances wherein it had been specifically mentioned. It was well defined by the deeds above recited and also on appellant's land by the action of her husband

in building a barn at the rear of his land, leaving a space ten feet in width for the alley.

The understanding that the alley should be open forever between Malick and Garman and the grantors, Eby and Feese, in connection with the reservations in the several deeds made to them by these grantors would not only be evidence tending to show a dedication, but it would be sufficient to raise an implied covenant that the alley should be so continued for the benefit of these purchasers, without which these lots would not have been bought. Malick was without doubt a competent witness to testify as to this understanding. He was in no way interested in the outcome of the litigation as he had parted with all of his title many years ago. The evidence as to this understanding was admissible and sufficient in explanation of the somewhat ambiguous language used in the deed of Eby and Feese in relation to the alley. The subsequent conduct of the grantors in permitting the alley's continued use was evidence tending to show their construction of this language. "Where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property and the other res gestæ of the transaction." Union Burial Ground Society v. Robinson, 5 Wh. 18; Fitzell, v. Philadelphia, 211 Pa. 1. And, as this court said in an opinion recently handed down in Rhoads v. Walter, ...... "The language in his deed is of great importance, but we must consider the conditions on the ground at the time the conveyance is made if we are to ascertain the real intention of the grantor. In a conveyance designating a street as a boundary, it is always open to proof to show that the street was unopened and unused, and the grantee's right was limited to the edge or side of the street. So with respect to the alley in question. As intimated by Brother PORTER, in Sharpless v. Willauer, 39 Pa. Superior Ct. 205, the conditions actually existing on

the ground at the time plaintiff acquired title must be averred in order to secure the relief sought." The fact that the description in the grantee's deed included the alley by metes and bounds would not alter the conditions as they existed or throw any additional light on the grantors intention. All the physical conditions are against the contention that the reservation was for the grantors own benefit. The presumption is that it is for the benefit of the grantee unless it clearly appears to the contrary in the deed. If the grantors had intended it for their own benefit, they should have expressed it in language adequate to show that intention when they had it in their power to do so.

The measure of damages for a trespass of a temporary nature is the cost of restoring the property to its former condition. Unless such cost would exceed the value of the property, in which case the value is the measure of damages: Lucot v. Rodgers, 159 Pa. 58; Hershey v. H. S. Kerbaugh, Inc., 242 Pa. 227; Welliver v. Pennsylvania Canal Company, 23 Pa. Superior Ct. 79. Compensation for the injury complained of is what is sought. Plaintiff should have had the obstruction to the alley removed. She cannot recover for a coal bin erected in her cellar to meet the necessity caused by the obstruction. Whatever inconvenience she was put to, or loss which she sustained by reason of the obstruction, would be competent proof of the measure of damages, subject to the general rule as above mentioned. As this item of damage was accurately expressed in the testimony, substantial justice will be done by modifying the verdict twelve dollars, the amount the coal bin cost. The charge of the court fairly presented the appellant's case. There is nothing in it prejudicial to her interest, nor did the court abuse its discretion in refusing a new trial, and unless it did so this court will not interfere.

The judgment as modified is affirmed at the cost of the appellant.