# John K. Gamble, Appellant, v. Philadelphia.

*Road law—Damages—Opening of streets.*

The Supreme Court will not reverse a judgment on a verdict in favor of a city in a road case, where it appears that the land for which damages is claimed was the bed of a street, and that the owner, prior to the opening of the street but after it had been placed on the city plan, had conveyed the land on both sides of the street, calling for the sides of the street as a boundary.

In such a case it is proper for the court to submit to the jury the question, what is the value of the land subject to the right of way of plaintiff's grantees, and to the right of the city to open the street.

It is immaterial that shortly before the street was opened, another street was opened up to the section of the first street owned by plaintiff.

Argued March 19, 1894.   Appeal, No. 94, Jan. T., 1894, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1890, No. 258, on verdict for defendant.   Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.   Affirmed.

Appeal from report of road jury.

At the trial, before REED, J., it appeared that, in 1851, plaintiff purchased a lot of ground containing nearly two acres.   In 1853, Seymour street was projected across the center of plaintiff's lot, and placed on the city plan.   The street was not opened, however, until December, 1890.   In 1861 plaintiff sold to one Edward Royal all that portion of his lot lying south of the plotted street, and in making his deed of the land sold he referred to Seymour street as a boundary as follows: " Beginning at a point on the southeasterly side of Seymour street " . . . . by a line running " to the southeast side of said Seymour street, thence along the southeast side of Seymour street to the place of beginning."   In 1862 the plan was confirmed by the court of quarter sessions.   In 1866 plaintiff sold to one Juliana Mintzer all that portion of his lot lying north of the plotted street, referring in his deed to the side of Seymour street as a boundary.

The land lying in the bed of Seymour street as laid out upon the city plan comprised a plot 50 feet by 132 feet, which plaintiff did not convey to any one.   All of this plot—50×132

—was taken by the city when Seymour street was opened on Dec. 16, 1890.

In 1891, Tacoma street was opened up to the section of Seymour street owned by plaintiff.

The following plan shows the situation of the streets.

The court charged as follows :

" There is more of a question of law in this case than of fact, and it becomes necessary for me to give you instructions as to what your duties are in the premises ; what the propositions of law are ; and to call your attention to the facts which you must pass upon.

" The Supreme Court has held, in the case of the Opening of Brooklyn Street, in 118 Penna., that when the owner of ground conveys land and describes it as being bounded on a certain street—and he also owns the bed of the street—that he does not thereby give up his claim to damages for the taking of that property in the street. In other words, he does not make a present of that property in the bed of the street to the

city or county, but he impliedly reserves the right to get whatever that land may be worth to him.

" In Brooklyn Street, as in all cases of this character, there was a previous conveyance to certain persons of property bounded on a certain street, and in Brooklyn Street, as in this case before us, there was a duty on the plaintiff in the case towards those persons to whom he had formerly conveyed land on that street, that he would not interfere, at least with the benefit that the street was to them as owners of property which he conveyed to them. In other words, they had certain rights as a result of the deeds made by him to them.

" When a man conveys a property on a certain street to a certain person, his grantees have a right to the enjoyment of that street as abutting owners, and anything that he does thereafter with the property which remains in himself—namely, the bed of the street—must be subject to any rights in the persons to whom he has previously conveyed. That element entered into the Brooklyn street case just as completely as it entered into the case of Whitaker v. The Borough of Phœnixville, and as it does in the case of Gamble v. The City, which we are now trying.

" The Supreme Court, in Brooklyn Street, gave no intimation as to what the measure of damages was under such circumstances. As far as the report of the case is concerned, it would seem as though damages were given for the value of the land appropriated. The question that the land was not so valuable to the plaintiff as it would have been had he not bound himself to his grantees to give them the benefit of a certain street on which the property abutted, does not seem to have been raised.

" In the case of Whitaker v. The Borough of Phœnixville, 141 Pa. 327, that question did come up in a measure, and the court threw some light on our duty in the premises. In that case a man held a certain four lots on a street in Phœnixville, called Main street; lots 23, 24, 25 and 26. In 1887, an ordinance of the borough of Phœnixville was passed, laying out a certain street called Fourth avenue, running at right angles with Main street. Those lots were fifty feet wide, and Fourth avenue, as laid out, occupied the whole of lot 23, and ten feet of lot 24. This ordinance was passed in 1887, but the street was not

opened until 1889.   Between 1887 and 1889, the owner of the
property—the plaintiff in that case—divided the lots again into
three lots instead of four.   Originally he had four fifty-foot
lots.   He had taken from him by the borough fifty feet from
lot 23—the whole lot—and ten feet from lot 24; so he had
left all of lots 25 and 26, and forty feet of lot 24, making in
all which he had left 140 feet.   He divided that into three lots
of 46⅔ feet each, and he conveyed two of those lots away; that
is to say, he conveyed part of lot 24, which was left him, and
part of lot 25.   He conveyed two of those lots away, and he de-
scribed the property as being bounded by Fourth avenue, the
new street, and all that he had left then was a part of lot 26.
There was nothing left on Fourth avenue except the bed of the
street.

   " Now, in his evidence in the case, he stated that in selling
those two new lots, he had sold one of them as a corner lot,
and in answer to a question as to whether he did sell one of
those lots as a corner lot, he said: ' Well, it was an ordained
street; I could not get out of it.   Q. But as a fact you did
represent it and sold it as a corner lot?   A. I do not know
that I represented it as anything.   It was a corner lot, he knew
that; he knew the street was ordained.'   Then he goes on to
say that he had got $200 more for it as a corner lot.

   " [Now, the Supreme Court held that he could recover dam-
ages for the loss of the property in the bed of the street—lot
23 and 10 feet of lot 24—but they said that as a result of
the conveyance, he had diminished the value of that property
because he could not use it, and the jury must take into con-
sideration how much less the property was worth, inasmuch as
he had sold a portion outside of the street as abutting on the
street, and, therefore, he could not use the property, which con-
stituted the bed of the street, because he had by those convey-
ances granted certain rights to the grantee of the property.] [1]

   " Now, what the court said was this, and I will read it to you,
as it is the law of the land, and it will help you to do your
duty in these premises which you must perfectly understand :

   " ' It is possible, however, that the value of the land taken by
the street may be affected to some extent by the fact that the
plaintiff had sold off the adjoining land to another as a corner
lot adjoining Fourth avenue, and thereby gave the right of

frontage on the avenue to its grantee, and deprived himself of all right to interfere in any manner with the frontage line on the said lot. If this difference in the character of his ownership, after the conveyance of the lot, affected the value of the remaining ground covered by the street, the plaintiff could only recover the value of that land as affected by the conveyance of the adjoining ground. The question whether the value of the ground was thus affected, and to what extent, should be left to the jury, with instructions that it is only the value of the land, subject to the right of the grantee of the adjoining lot to have a clear front on the avenue, that should be allowed as damages.' "

" Now the point that brings us to is this: That a man does not give up his right to recover damages from the city because he conveyed land on the proposed street as bounded by that street; but if, by conveyance to a certain person or persons, he binds himself—especially if he does so for a consideration—he binds himself to give them the enjoyment of that property; he of course cannot interfere with the right of the grantee, and if that enjoyment of the property by the grantee cuts down the value of the property left, then that property is not worth as much as it was before, and the city is only bound for what it is actually worth.

" The question here is, what is the difference? The proof is that, as early as 1851, Mr. Gamble obtained a conveyance of this property, and Seymour street was a contemplated street in 1858. There is a plan which shows that, in 1858, Seymour street was a contemplated street in that locality. In 1856, an ordinance was passed directing that Seymour street be placed upon the city plan, and that I think was confirmed by the court of quarter sessions in 1862, and by the board of surveyors in 1858.

" Now, in 1861, Mr Gamble made his conveyance of this property, and in 1866 he made another; and in those conveyances he describes the lots as beginning at a point formed by the intersection of Wayne and Seymour streets, etc., to a point on the northwestern side of Seymour street, and thence extending along the side of Seymour street, etc.

" Now, taking Brooklyn Street, and the case of Whitaker v. The Borough of Phœnixville, it is plain that while no dedica-

tion was made of this property to the city, yet certain rights accrued to the grantee in that case. Mr. Gamble made two conveyances; one in 1861 and one in 1866, and the question to some extent now is, exactly what were the rights in them? Because, whatever is left in him, is subject to the rights which he conveyed to his grantees.

" Now, it is important to get what remained in him after 1861, after he conveyed to Edward Royal, and after 1866, after he conveyed to Juliana Mintzer.

" The Supreme Court has said, in the case of Spackman v. Steidel, 88 Pa. 453, that, where a public street is called for, the grantee acquires title to the middle of the street, where the street called for as a boundary is a dedicated public highway; but if it is not a public street and not dedicated to public use, then the grantee acquires simply a right of way over the property or street. It is necessary for me to determine the question of law, what rights were in Gamble's grantees, in order to ascertain what rights Gamble had left.

" In 1861 this property remained in its original condition, physically, at least. The city had given notice of its intention to take the property, but there were no proceedings to take it until 1890. Now the question is, what rights were in Gamble's grantees? And in following Spackman v. Steidel, in 88 Pa., and Robinson v. Myers, in 67 Pa., I will, for the purposes of this case, direct you that the law is that a street plotted in this way, or in contemplation, is not a public highway, in the sense in which those words are used. In other words, whatever rights Edward Royal and Juliana Mintzer had as grantees of Gamble did not go beyond a right of way over this property.

" [The city having power, which it derives from the state, of not only taking a man's land, but of notifying him of its intention to do so a long time before it actually does take it, perhaps a lifetime, can therefore make it impossible for him to get any other enjoyment out of it than by having a frontage upon it. The city having that power of taking the land, may exercise it in such a way as to preclude the owner of the property from any other enjoyment than that of a frontage upon it from the time the notice is given, and that may be many years ahead, as it was in this case.] [2]

" Here was a property that was burdened with a notice that

some day or other this land would be taken, or could be taken, and it was thirty years before that question was settled, as it was in 1890. It was in the power of the city to let that condition of affairs last indefinitely longer, and it was also in the power of the city to vacate the property and give the land to its original owner. [In the meantime this property was subject to the right of way on the part of those grantees. Now that right of way to the grantee forms a subject of consideration of the deed to Mintzer and Royal. The question is for you to say what use this man could make of the land; what value it was to its owner subject to the right of way on the part of those owners of adjoining premises, and subject also to the fact that the city might at some future time come in and take it.] [3]   The fact that the city could take it and turn it into a street and thereby interfere with the use of this land would not, under those two decisions which I quoted, form any reason for the diminution of the value which you might put upon this property. But this fact would: that this land was subject to an easement on the part of those persons to whom the land was conveyed, and also the fact that, whatever was done with this property of the owner in the interval, it must be such a use as would not interfere with his obligation to Mintzer and Royal, that when the street was taken by the city it should be a highway like any other street in the city. In other words, Gamble, in this case, did not bind himself to open this street or did not dedicate it to the city and did nothing further than to give to Mintzer and Royal a right of way, an easement over that property in the interval, and bound himself that anything he should do would not interfere with the full enjoyment of this property by Mintzer and Royal when the street was physically opened.

"Now the evidence in this case varies very considerably, and to some extent is affected by the fact that some of the witnesses in their testimony say that since these proceedings were begun by a jury of view, a certain other street, called Tacoma street, was opened there and furnishes an outlet to this property. [Now, I think so far as this case is concerned, you can consider Tacoma street as out of it. Those damages, whatever they were, were settled before Tacoma street came into existence as an actuality, an actual street which could be used.] [4]   But you have a right to consider the possibility

of the owner of this property getting access to this property through another person or through any of his neighbors, and enjoying himself the use of any property which he may have there. There is no evidence on that point, but you have a right to consider that it would be possible for him to make such arrangements that he could use this land and get access to it by means of something else than either Tacoma street or Seymour street, or any of the streets which have since been opened or have since been ordained by the public authority, but in doing that you must consider how far the witnesses, in fixing the value, took those things into consideration. [But taking those things into account you must not fix such a price upon this property that leaves out of it the inconveniences, situated as this property is, not through the act of the city, but through the act of the plaintiff himself in excluding himself from interfering with the use or enjoyment of this property by the owners of the adjoining property, which he conveyed to them, a part of which enjoyment was the access to this street.] [5] In their testimony as to the value of this property, from nothing on the part of the witnesses for the defendant—the city—who say that the property was worth nothing, up to considerably over two thousand dollars on the part of certain witnesses called by the plaintiff, one witness said it will be worth as much whether Tacoma street was there or not, and another one said that no matter whether this property had any access or not it was still just as valuable. That is a matter for you to say. You will say what you think land of that kind under such circumstances is worth. It is a question for you to decide, subject to the law as I gave it to you, how much this plaintiff is entitled to recover for the property. I will say in this case, under the decision of Lamoreaux v. the County of Luzerne and Freeze v. the County of Columbia, that this court has jurisdiction and that this appeal was properly taken under the act of 1874."

Defendant's points were, among others, as follows:

" 3. The plaintiff having sold to abutting owners ·bounded on the street, he is entitled to recover only the value of the lot subject to the rights of the abutting owners to have a clear front on said street, and he cannot build upon nor improve the bed of Seymour street under the terms of his deed to Mintzer and

Royal. *Answer :* I affirm that point with this qualification: that he cannot make any use of the bed of Seymour street in such a way as to interfere with the right of way or easement which he gave his grantees, and he cannot use it in such a way as to interfere with their right to have a front on the street, when that street has been regularly opened." [6]

" 4. That the jury, in considering the question of damages for the opening of Seymour street, can only consider the property as it was in 1890 and cannot take into consideration any value to the property of the plaintiff by reason of the opening of Tacoma street." Affirmed. [7]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–7) instructions, quoting them.

*A. W. Horton,* for appellant, cited: Union Burial Ground v. Robinson, 5 Whart. 18; Ball v. Ball, 4 Clark, 505; Ott v. Kreiter, 110 Pa. 378; Bellinger v. Union Burial Ground Society, 10 Pa. 135; Brooklyn Street, 118 Pa. 640; Borough of Easton v. Rinek, 116 Pa. 1; Whitaker v. Phœnixville, 141 Pa. 327; Opening of Wayne St., 124 Pa. 135.

*James Alcorn,* assistant city solicitor, *Geo. E. Fili,* assistant city solicitor, and *Chas. F. Warwick,* city solicitor, with him, for appellee, cited: Whitaker v. Phœnixville, 141 Pa. 327.

OPINION BY MR. JUSTICE GREEN, July 11, 1894:

It seems to us this case was tried in accordance with our rulings in Brooklyn Street, 118 Pa. 640, and Whitaker v. Phœnixville Boro., 141 Pa. 327. The learned court below very carefully instructed the jury as to the right of the plaintiff to have damages under those decisions. Undoubtedly the plaintiff's right as to the use of the ground lying in the bed of Seymour street, was affected by his conveyances to Mintzer and Royal. Certainly whenever Seymour street was opened the plaintiff could do nothing to obstruct the use of that street by his grantees. Beyond all question they had a right of free passage over the street, and it could not possibly be occupied by buildings, either as against the city or the plaintiff's grantees. It was of no use to theorize about the value of the ground as building lots, since it could not lawfully be used for any such

purpose.   The evidence on that subject was received, but it could not be permitted to constitute the basis of an inflated claim for damages upon a theory which had no lawful existence. The learned court did leave to the jury the question, what was the value of the land taken subject to the right of way of the plaintiff's grantees, and also to the right of the city to open the street.   On this subject there was considerable conflict of testimony, the defendant's witnesses testifying that in such a situation the land had no value whatever, some of the plaintiff's witnesses testifying that it was worth about two thousand dollars notwithstanding these restraints upon the plaintiff's rights in the land, and others admitting that these restraints would impair its value materially.   So far as Tacoma street is concerned the same consideration would be applicable, and therefore we do not think there was any error in the views expressed by the learned court below on that subject.   The opening of these two streets occurred so nearly together that there could be no appreciable effect upon the measure of damages whether Tacoma street was opened a little before or a little after Seymour street was opened; and in any event we do not see how this piece of ground, which would not admit of any buildings being erected upon it, could have any additional value imparted to it by the opening of a street which simply led up to it.   Had the ground of the plaintiff been capable of use for building lots, of course the case would have been different.   But the court did leave to the jury to say what was the plaintiff's land worth in view of all the circumstances, and the jury said it was worth nothing.   The assignments of error are dismissed.

Judgment affirmed.