Pennsylvania Co. for Insurances on Lives and Granting Annuities et al., Appellants, *v.* Philadelphia.

Argued January 17, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*John P. Connelly,* with him *F. Gilman Spencer* and *Norris S. Barratt, Jr.,* for appellants.

*Howard E. Stern,* Assistant City Solicitor, with him *David J. Smyth,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, April 15, 1935:

This is an appeal by plaintiffs from the entry of judgment for defendant non obstante veredicto in an eminent domain proceeding for the assessment of damages to land in the bed of Windrim Avenue, a city street in Philadelphia.

Mary R. Fox, appellants' devisor, on November 18, 1891, acquired a tract of land triangular in shape, bounded on one side by the center line of Wyoming Avenue, on another by the center line of Sixteenth Street, and on its third side by a line parallel to the right-of-way of the Philadelphia & Reading Railway Company. In 1899, the City of Philadelphia, by ordinance, plotted Windrim Avenue through this tract. In 1907, the part of the land lying between the right-of-way of the railroad company and unopened Windrim Avenue was conveyed to the railroad company. This conveyance bounded the tract conveyed by the side of Windrim Avenue, the measurements in the description being exact to the side of the avenue. On January 31, 1916, appellants conveyed part of their land to one Swartz. The description in this deed reads in part: "Thence extending westwardly along the south side of Louden Street 330 feet 2½ inches to a point on the southeasterly side of Windrim Avenue (60 feet wide), thence extending southwestwardly along the southeasterly side of Windrim Avenue 485 feet 8⅞ inches to a point on the north side of Wyoming Avenue." Contemporaneously with this conveyance, appellants by deed dedicated half of the bed of Wyoming Avenue, half of the bed of Sixteenth Street and all of the bed of Louden Street to the city. These streets, with Windrim Avenue, form the boundary of the tract granted. The

deed contained the customary clause "together with all and singular the . . . ways, streets, alleys, passages, . . . thereunto belonging or in any wise appertaining."

The court held the case was ruled against plaintiffs by Hawkes v. Phila., 264 Pa. 346. We are required to determine just what that case decided and whether the contention, presented by counsel for appellants, that the instant proceeding is differentiable from the decided one on its facts, is correct.

The controversy in the Hawkes case arose over the value of a piece of land forming the northern half of the bed of Arch Street, between Sixtieth and Salford Streets. McCoy, a predecessor in title to the appellant in that case, in 1858 sold the land north of Arch Street to Ann Morris, described as beginning at a point in the north line of Arch Street, thence extending along the north side thereof and by other boundary lines back to the north side of Arch Street, the place of beginning; bounded on the south by Arch Street. Later in the same year McCoy conveyed to Millich the land on the south side of Arch Street, describing the land as running eastwardly along the middle line of Arch Street. The title to the northern half of the bed of Arch Street remained in the grantor and by conveyances from him and his grantee became vested in Hawkes. Arch Street before the conveyances was a plotted but unopened street. In 1910 the city directed it to be opened, whereupon Hawkes claimed the value of the land in the northern half of the bed of the street. At the trial it was agreed that this land, subject to an implied covenant or easement of right-of-way was valueless (similarly plaintiffs' witnesses testify in the instant case), and if there was no right-of-way then the land was worth $2,600. In disposing of that case the court below, believing the land was encumbered by a right-of-way, either by an implied contract, or by virtue of an easement, entered judgment for the city.

On the facts as outlined, we said, speaking through Mr. Justice KEPHART (page 350 et seq.) : "Where land is con-

veyed bounded by an unopened street projected by a municipality, the grantee, by implication, acquires an easement over the bed of that street, unless the circumstances attending the conveyance and the description of the grant negative such implication. . . . if it [the municipality] does open the street for public use, there can be no doubt that, whatever covenant springs from the conveyance of a lot bounded by a municipally plotted street, is executed when the street is actually opened as a street . . . and the fee in the bed of the street subject to these burdens remains in the grantor and his successors in title. . . . The 'attending circumstances' which defeat the implication of a covenant or easement must be gathered from the instrument conveying the land and 'the res gestæ of the transaction. . . . We have in this case, then, a conveyance on one side of Arch Street, between the streets mentioned, calling for Arch Street as a boundary, while on the opposite side of the street, the center line of Arch Street is called for. . . . The fee in the bed of the northern half is in the grantor and his successors, subject to the right of the grantees to use it as outlined. When the municipality opened it, there being nothing to show the grantor, or his successors, released their claim, the owner was entitled to be compensated for the taking." The opinion then goes on to discuss the cases of Whitaker v. Phœnixville Boro., 141 Pa. 327, and Gamble v. Phila., 162 Pa. 413, and proceeds: "The conclusion as to the value of the northern half of the bed of Arch Street was fair. On the south side of Arch Street, houses had been built on the land, sidewalks constructed and curbing laid. While this was subsequent to the first conveyance by McCoy, as here stated, the right acquired by his grantees, and their successors, in actual use would, in all fairness, cause the bed of the street to be valueless, as counsel agreed. . . . The land was opened by ordinance in 1910; and we here hold that the owner is entitled to compensation for the land taken subject to such

impediments on his ownership as he created, which in this case caused his right to be worthless."

In what respects does the case in hand differ from the Hawkes case? The clearest difference between the situations in the two cases is to be found in the fact that in the Hawkes case, one of the conveyances by the original owner specifically included the land between the south side of Arch Street and the middle of Arch Street. In the instant case, appellants limited their actual grants to the land not part of the unopened street, both in the case of the conveyance to the railroad company and to Swartz. In the Hawkes case it seems clearly manifest that it was primarily the easement or right-of-way in favor of the *second grantee,* to whom half of the bed of the street had been conveyed, that rendered the fee of the northern part of Arch Street valueless.

Appellants contend for the principle restated in Neely v. Phila., 212 Pa. 551, "Where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property, and the other res gestæ of the transaction."

The precise decision of this court in the Neely case is made clear in the following additional excerpt from the opinion of Mr. Justice MESTREZAT: "There is but a single question in this case, and it is whether the grant by the executors of Charles Blanchard, deceased, to Joseph Hancock in 1887, contains an implied covenant of an easement over the strip of land in the bed of Glenwood Avenue in front of the land conveyed to Hancock. The descriptive words in the grant to Hancock affecting the question presented here are as follows: 'All that certain lot or piece of ground . . . described according to a survey . . . as follows, to wit: Beginning at a point on the northwest side of Glenwood Avenue as laid out on the city plan . . . thence extending along the center of Twenty-first Street laid down as aforesaid . . . to a

point in the intersection of the center of Twenty-first Street with the northwest side of Glenwood Avenue, and thence extending along the northwest side of Glenwood Avenue . . . to the place of beginning, containing one and sixty-one one-hundredths acres more or less.' When the conveyance to Hancock was executed and delivered, Glenwood Avenue between Twentieth and Twenty-first Streets had been plotted on the city plan and confirmed by the board of surveyors, but had not been opened as a street. At that time and prior thereto it 'never had any existence except on paper.' Blanchard's executor, the plaintiff, claims that the northern half of the bed of Glenwood Avenue abutting the Hancock land and for which damages are claimed here, was not subject to the servitude of Hancock and his grantees, prior to the actual opening of the avenue, and that the damages must be assessed against the city free and discharged of such servitude. The court below so held and the city has appealed. . . . Applying these rules in interpreting the grant under consideration, it is clear that the parties intended to limit the conveyance to the land within the description, and to exclude the strip or piece covered by the northern half of Glenwood Avenue as well as any implication of a right to an easement over it. . . . The starting point in the description of the land is, therefore, definitely fixed on the side of a plotted but unopened street as a landmark, and by reference to an artificial point on the ground. The land is then described by courses which are given in degrees and fractions of a degree and by distances which are given in feet and inches and fractions of an inch. To this minuteness in detail of description are added as boundaries the right-of-way of the connecting railway and the center of Twenty-first Street. The quantity of land conveyed is not a lot or an indefinite amount of land, but a fixed and certain acreage of one and sixty-one one-hundredths. This was carved out of a large tract of land which included the bed of the plotted and unopened street. In addition to these facts, there is another

significant and material if not controlling fact, that in describing the land granted, the center line of Twenty-first Street is made the west line of the premises conveyed, thereby including in the grant the one-half of that street; and the northwest side, and not the center, of Glenwood Avenue is made the northwest line of the premises, thereby excluding from the grant the one-half of the avenue. We think also the evidence shows that at the time of the conveyance to Hancock, Twenty-first Street was physically opened and in use by the public up to Glenwood Avenue, thereby affording the owner of the premises an outlet to the city. We think it clear that the description of the premises and the attending circumstances, the 'res gestæ of the transaction,' negative the implication of an easement over Glenwood Avenue in favor of Blanchard's grantee of the Hancock land. It is difficult to see how a grantor could more effectively exclude such an implication than is done in the description in the deed from Blanchard to Hancock. The grantor took every precaution, except declining to make the grant, that any person could take to confine his grant to the limits designated in his deed, and to hold to the contrary would be to declare that the owner of land abutting on a street which is unopened and simply plotted on the city plan cannot, under any circumstances and by the use of any descriptive terms, convey it without an implied covenant that the grantee shall have an easement over the land in the bed of the street. Such is not the law of this Commonwealth and is not supported by reason or precedent."

It is our view that the Neely case is much more in point in the solution of the instant problem than is the Hawkes case. Both the conveyance to the railroad company and the conveyance to Swartz were practically identical with the conveyance in the Neely case. In the Hawkes case, on the other hand, one of the conveyances went to the middle of the unopened street, and we accordingly held that by that voluntary act the owner thereby encumbered

the other half of the unopened street, and rendered his fee ownership thereof valueless.

If the description in the Neely case negatived an implication of an easement in the grantee over the bed of the street, it is difficult to see how any different conclusion could be reached in the present case.

Let us then consider the circumstances attending the conveyances. We agree with what was said by the New York Court of Appeals in Re Opening Northern Boulevard, 258 N. Y. 136, 179 N. E. 321, which quotes from Neely v. Phila., "Whether a grant of an easement arises from implication in a grant of real estate depends upon the intent of the parties to the grant; and in considering the grant the court will take into consideration the circumstances attending the transaction, and the state of the thing granted for the purpose of ascertaining the intention of the parties." It cannot be said that the use of Windrim Avenue, then unopened but plotted, was necessary to the Philadelphia & Reading Railway Company. It had the advantage of other open streets, and the conveyed plot merely enlarged its right-of-way. It is not likely that either party to that grant intended that the grantee should have any easement in or right-of-way over Windrim Avenue. Likewise in considering the Swartz grant, it should be remembered that there were four streets made available to the grantee. Belfield Avenue, one of the surrounding streets, was then physically and legally opened, and the other surrounding streets, Louden, Wyoming and Sixteenth, were dedicated. The failure to dedicate Windrim Avenue is rightfully pointed to as significant. In appellants' grant to Swartz five streets surrounded the property, of which one was legally open. Three of the four, Wyoming Avenue, Louden Street and Sixteenth Street were dedicated on the very day of the grant, but the fourth, Windrim Avenue, was not included. These deeds of dedication are strong evidence negativing any implication of an easement in the grantees so far as Windrim Avenue was concerned.

It is our opinion, as it was in the Neely case, that the description of the premises and the attending circumstances surrounding both conveyances, one to the railroad company and the other to Swartz, negative the implication of an easement over Windrim Avenue in favor of either grantee.

Accordingly the judgment of the court below is reversed and it is ordered that judgment be entered in favor of the plaintiffs upon the verdict.