## Finnerty et ux. v. Haas et ux.

*M. A. Maloney*, for plaintiffs.
*S. Finestone*, for defendants.

ALESSANDRONI, J., February 10, 1947.—This suit in equity was presented upon bill and answer. Complainants seek a mandatory injunction directing respondents to replace a common stairway and platform which existed in the rear of the homes of the respective parties.

Upon consideration of the pleadings and the admissions contained therein, the court makes the following

### Findings of fact

1. Complainants are the owners of a lot or piece of ground and the dwelling erected thereon, known as 867 Anchor Street, in the 35th Ward of the City of Philadelphia, having acquired title thereto from the Franko Holding Company, by deed dated December 8, 1936.

2. Respondents are the owners of the adjoining lot or piece of ground and dwelling erected thereon, known as 869 Anchor Street, having acquired title thereto from the Franko Holding Company by deed dated December 9, 1936.

3. Prior to the dates of the respective deeds to the parties hereto the said properties were owned by the

Franko Holding Company, which had constructed the dwellings in the manner hereinafter described.

4. The properties of the parties hereto are part of a development consisting of a row of "airlite" homes. In the rear, the kitchen doors of each dwelling are opposite to and face each other and open on a common platform, six feet ten inches long and three feet eleven inches wide, extending from one kitchen door to the other. This platform is approximately eight feet six inches above the ground and contains a stairway consisting of 12 steps which lead from the platform to the ground and the back yards of each of the dwellings. This stairway, being two feet seven inches wide was located in the middle of the platform with half of its width on complainants' lot and half on respondents' lot.

5. The rear of the dwellings were constructed in this fashion to afford ingress and egress from each dwelling to the respective rear yards and the platform and stairway were intended for the common use of the occupants of each of the dwellings and had been so used continuously since the erection of the houses.

6. Between July 22 and July 28, 1946, while complainants were on vacation, and without their knowledge and consent, respondents detached the stairway from the platform and deposited it in complainants' back yard. Respondents completed the operation by tearing down and removing their half of the platform which was situate on respondents' lot.

7. As a result of these acts of respondents, complainants have been deprived of the means of egress and ingress between their dwelling and the back yard over the said platform and stairway and are restricted to the use of a passageway through their cellar and a door installed in the basement of their home at yard level.

8. Respondents have refused to restore the stairway and that part of the platform necessary to support it and to afford landing space at the head of the stairway.

9. All of complainants' requests for findings of fact are affirmed; no requests have been submitted by respondents.

### Discussion

This neighborhood dispute acquires singularity in that our research fails to disclose a factual precedent. This is particularly interesting in view of the thousands of homes of similar construction existing in the City of Philadelphia. The intention of the builder is obvious. The houses were so constructed that the stairway and platform were built to serve both properties and care was taken to place the stairway equally upon both of the lots. Moreover, the kitchen doors of each of the properties are useless without a means of ingress and egress to and from the rear yard of each of the properties, approximately eight feet four inches below.

In Lauderbach-Zerby Co. v. Lewis, 283 Pa. 250, the court said:

" 'It is settled law in Pennsylvania that an owner of land may arrange it as he pleases, doing no injury to others, and that any ways or other privileges which he may provide for the necessary or convenient use of the different parts of the land, or of structures on it, will remain as servitudes upon the parts subjected to them by him, in the hands of subsequent purchasers with notice, or when the easements are continuous and apparent. The easements thus created, being for the specific use of the lands for which they were provided, become appurtenances of those dominant estates, and require no deed or writing to support them; they pass by a conveyance of the estates to which they are ap-

purtenant.' " See also Heffley v. Lohr, 149 Pa. Superior Ct. 586.

In order that an easement by implication may arise, the parties to the transaction must have so intended and their intent is determined from the nature of the properties, from the circumstances surrounding the transaction and from the inferences drawn from those circumstances: Penna. Co. et al. v. Philadelphia, 318 Pa. 209; Liquid Carbonic Co. v. Wallace, 219 Pa. 457.

It has been said that three things are regarded as essential to the creation of an easement by implication on the severance of the unity of ownership in an estate: First, a separation of the title; second, that, before the separation takes place, the use, which gives rise to the easement shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and, third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these another essential is sometimes added—that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time: Becker v. Rittenhouse, 297 Pa. 317.

Respondents contend that implied easements are discouraged by the law, especially in urban communities, because they retard building and improvement. Such a policy is inapplicable here. The quiet enjoyment of respective home owners in developments such as this, which are characteristic of the City of Philadelphia, is paramount. Respondent contends that the stairway was intended only as an added convenience and that its use is not necessary to the beneficial enjoyment of the land granted. This argument is based upon the existence of the passageway through the cellar at yard level leading to the rear yard of the property. As indicated in the decision of Heffley v. Lohr, supra, absolute necessity under the facts in this case is not essential to

the creation of the easement. Moreover, our attention has been directed to the conduct of respondent in restoring this "added convenience" for the benefit of his property alone.

The construction of these houses clearly discloses the intention of the builder and common owner of the properties. The respective purchasers bought their homes with notice of the mutual servitudes which were apparent upon the most casual inspection. For 10 years respondents respected the rights of their neighbor. We are not impressed by respondents' argument that the use did not continue for a sufficient length of time prior to the severance to give rise to an easement. The reason for requiring such a continuous use is to establish the intention that the servitude be permanent. That intention of permanency was fixed by the design of the builder.

We therefore find that respondents purchased their home with notice of an obvious servitude, and had no right to destroy it without the consent of the dominant owner.

## Conclusions of law

1. Complainants are the owners of an easement in the stairway which existed in the rear of their home and so much of the platform existing at the head of the said stairway as was necessary for its use.

2. Respondents had no right to terminate the easement without the consent of the dominant owner.

3. The prayer of this bill in equity should be granted, costs to be borne by respondents.

4. Complainants' requests for conclusions of law are affirmed. No requests were submitted by respondents.

## Decree nisi

Now, to wit, February 10, 1947, it is ordered, adjudged and decreed that Francis J. Haas and Gladys E. Haas, respondents, forthwith replace the stairway

and platform heretofore existing in the rear of premises 867-869 Anchor Street, Philadelphia, in the manner and in the location heretofore existing prior to July 22, 1946; costs to be borne by respondents.

The prothonotary is directed to enter this decree nisi and to give notice to the parties hereto or their counsel, and unless exceptions hereto are filed within 10 days this decree shall become final.